[No. 16059.  *En Banc.*  May 3, 1921.]

THE STATE OF WASHINGTON, *Respondent,* v. NICK NICCOLI *et al., Appellants.*[1]

INTOXICATING LIQUORS (42)—INDICTMENT AND INFORMATION (45)—REQUISITES—INTENT—SUFFICIENCY. Under Laws 1917, p. 60, making it criminal for a person to open up, conduct or maintain any place for the unlawful sale of intoxicating liquor, an information charging that defendants did unlawfully and feloniously conduct and maintain a place for the unlawful sale of intoxicating liquors, sufficiently alleges the commission of an overt act coupled with an intent to commit a crime.

CRIMINAL LAW (461)—CRUEL OR UNUSUAL PUNISHMENT—SEVERITY OF SENTENCE FOR "JOINTISTS". The fact that one section of the intoxicating liquor law makes the opening up and keeping of a liquor joint a felony, while other sections provide that the owner or lessee of premises so used, and persons maintaining a club house for the distribution of liquor to members, shall be guilty of a misdemeanor only, is not objectionable as a denial of equal protection of the laws.

Appeal from a judgment of the superior court for Pierce county, Fletcher, J., entered January 31, 1920, upon a trial and conviction of being a jointist. Affirmed.

*S. A. Gagliardi* and *Bates & Peterson,* for appellants.

*William D. Askren, J. W. Selden,* and *Frank D. Nash,* for respondent.

[1]Reported in 197 Pac. 923.

MAIN, J.—The defendants in this case were charged, tried and convicted of the crime of being jointists. From the judgment and sentence entered after the verdict they appeal. The charging part of the information is as follows:

"That the said Nick Niccoli and John Doe Quiriconi in the county of Pierce, in the state of Washington, on or about the 11th day of November, nineteen hundred and nineteen, then and there being unlawfully and feloniously did conduct and maintain a place for the unlawful sale of intoxicating liquor, to-wit: the premises known as No. 1502 Broadway in the city of Tacoma, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Washington."

The statute (Laws of 1917, p. 60) upon which the information is based is as follows:

"Any person who opens up, conducts or maintains, either as principal or agent, any place for the unlawful sale of intoxicating liquor, be and hereby is defined to be a 'jointist'. Any person who carries about with him intoxicating liquor for the purpose of the unlawful sale of the same be and hereby is defined to be a 'bootlegger.' Any person convicted of being either a 'jointist' or 'bootlegger' as herein defined shall be deemed guilty of a felony and shall be punished by imprisonment for not less than one nor more than five years."

By comparison, it will be observed that the information is drawn in substantially the language of the statute. The first point is that the information is defective because it does not allege an overt act coupled with an intent to commit a crime. This question was before this court in *State v. Burgess*, 111 Wash. 537, 191 Pac. 635, and was there fully discussed and considered. In the course of the opinion it was said:

"The argument proceeds upon the assumption that the statute seeks only to punish the entertaining of the

intent, and not for the committing of any overt act on the part of the accused. This, we think, is an erroneous assumption. Manifestly the jointist statute strikes at the opening up, conducting or maintaining of places; 'joints,' in the common parlance, where the unlawful sale of intoxicating liquor is carried on. It seems to us that it is plainly the opening up, conducting or maintaining of such places for which the prescribed punishment is meted out. Of course, the prohibited place could not exist as such without an intent on the part of the accused to make it such a place. But that, it seems to us, does not argue that the lawmaking power is not primarily interested in the prevention of the opening up and maintenance of such places. We are of the opinion that the opening up, conducting or maintaining of the place for the unlawful sale of intoxicating liquor are the overt acts for which the law seeks to punish, and that the intent of the accused is merely incidental thereto; just as intent is incidental to all overt criminal acts, to be considered in determining the question of guilt. We concede that the particular intent to sell intoxicating liquor at a particular place, that is, an intent to sell it generally in the sense of making a business of so doing at such place, unaccompanied by the overt act of opening up, conducting or maintaining a place in such manner as to evidence such intent, could not be rendered punishable by legislative enactment. But we do not think such is the meaning of this statute. When one 'opens up, conducts or maintains' a place for the sale of some commodity, he necessarily does so by some overt act manifesting his intention in that regard. We think that, without some outward manifestation of such intent, and without the ability to consummate such sales by furnishing and delivering, or causing the furnishing and delivery of such commodity, it could not be said that one *opens up, conducts, or maintains* a place for the sale of such commodity, within the meaning of these words as used in this statute. Counsel for appellant call our attention to, and rely upon, a recent decision of the Oklahoma court in *Proctor v. State,* 15 Okl. Cr. 338, 176 Pac. 771, a de-

cision which seems to express views out of harmony with the conclusion we here reach, though a critical reading of that decision may suggest to some minds that the question as there presented may be differentiated from the one here presented. We are, however, so thoroughly convinced of the soundness of our conclusion in this case that we would feel constrained to adhere to it rather than follow the Oklahoma decision, even though it be not distinguishable from our present case.''

After considering the question again in the present case, we adhere to the views expressed in the *Burgess* case. The information charged a crime.

It is next claimed, that the appellant has been denied the equal protection of the law because the section of the statute under which he was convicted makes the offense a felony and imposes a penalty for such offense, while one convicted under either § 5 or § 10 of Initiative Measure No. 3 (Laws of 1915, p. 2, ch. 2) would only be guilty of a misdemeanor and would receive much lighter sentence. Section 5 of Initiative Measure No. 3 is what is generally known as the abatement statute, and provides that upon the conviction of the owner or lessee of a building, that the premises where the intoxicating liquor was unlawfully manufactured or sold are declared to be common nuisances and may be abated as such. Section 10 of the act makes it unlawful for any person to keep, or maintain, or by associating with others, keep or maintain any club house or other place where intoxicating liquor is received, kept or disposed of, or for the purpose of distribution among the members of a club or association. This section is directed against the members of clubs or associations. The violation of either § 5 or § 10 is a misdemeanor and a person upon conviction may be punished for such an offense. In 1917, to Initiative Measure No. 3 there were

added certain sections, one of which was that under which the conviction was had in this case. That section provides that any person who opens up, conducts or maintains a place for the unlawful sale of intoxicating liquor is guilty of being a jointist, and upon conviction shall be imprisoned as for a felony for a term of not less than one nor more than five years. We see no reason why the legislature could not make one who opens up, conducts or maintains a place for the sale of intoxicating liquor a felony even though one convicted under either § 5 or § 10 of Initiative Measure No. 3 would be only guilty of a misdemeanor. The offenses are not the same. The legislature had a right to regard the opening up and so forth of a place for the sale of intoxicating liquor as a graver offense than that defined in either § 5 or § 10 of Initiative Measure No. 3. *State v. Hessel,* 112 Wash. 53, 191 Pac. 637.

There was also argued in this case the question as to the effect of amendment 18 to the Federal constitution upon the prohibition laws of the state. When the case was caused to be heard *En Banc,* the court was of the opinion that this question was necessarily involved in the case. It subsequently developed, however, that the question is not in this case. The appellants were tried and convicted prior to the time that the amendment became effective as a part of the Federal constitution. The question is an important one and one which it seems to us should not be disposed of by mere academic discussion, as it would necessarily be if determined at this time.

It is the opinion of the court that the decision of the question should be deferred until it comes before us as a question to be determined in disposing of a particular case. The argument which the court has heard and the briefs which have been read and considered will be

of material assistance when the question may be again presented.

The judgment will be affirmed.

.ALL CONCUR.