[No. 28806. Department One. January 7, 1943.]

THE STATE OF WASHINGTON, *Respondent*, v. LILLY STUMP *et al., Appellants.*[1]

[1]Reported in 132 P. (2d) 727.

*John C. Richards,* for appellants.

*Leslie R. Cooper, C. P. Brownlee,* and *Philip Sheridan,* for respondent.

JEFFERS, J.—On February 27, 1942, Lilly Stump and Clyde Nunn were, by an information filed by the prosecuting attorney of Snohomish county, jointly charged with a violation of Rem. Rev. Stat. (Sup.), §§ 7306-92A and 7306-93 [P. C. §§ 3180-102 and 3180-103], as follows:

"That the said Lilly Stump and Clyde Nunn, in the county of Snohomish, state of Washington, on or about the 20th day of February, 1942, wilfully and unlawfully did keep and have in their possession, intoxicating liquor, to-wit: whiskey, on premises conducted and maintained by them as principal or agent, with intent to sell the same.

"And she, the said Lilly Stump, on the 10th day of May, 1939, in justice court, Lowell precinct, Snohomish county, Washington, was duly and legally convicted of a violation of the Washington state liquor act, to-wit: unlawfully selling liquor by the drink.

"And she, the said Lilly Stump, on the 15th day of September, 1939, in justice court, Everett precinct, Snohomish county, Washington, was duly and legally

convicted of a violation of the Washington state liquor act, to-wit: unlawful possession with intent to sell."

Section 7306-92A, *supra,* provides:

"Any person who shall keep or possess liquor on premises conducted or maintained by him as principal or agent with the intent to sell the same contrary to provisions of this act, shall be guilty of a gross misdemeanor. The possession of liquor by such principal or agent on premises conducted or maintained, under Federal authority, as a retail dealer in liquors, shall be *prima facie* evidence of the intent to sell liquor."

Section 7306-93, *supra,* provides, in part:

"Every person guilty of a violation of this act for which no penalty has been specifically provided shall be liable on conviction, for a first offense to a penalty of not more than three hundred dollars, or to imprisonment for not more than two months, with or without hard labor, or both; for a second offense to imprisonment for not more than six months, with or without hard labor; and for a third or subsequent offense to imprisonment for not more than one year, with or without hard labor."

Defendant Nunn moved for a separate trial, based principally upon the ground that he would be prejudiced by a joint trial, due to the fact that his codefendant had been charged with prior convictions.

Defendants demurred separately to the information on the grounds that the information does not substantially conform to the requirements of the law; that more than one crime is charged; and that two different charges have been improperly united in the information.

The trial court denied Nunn's motion for a separate trial, and overruled the demurrers, and in so doing had the following to say relative to the procedure to be followed during the trial:

"In the absence of statutory directions sound discretion is permitted a trial court as to procedure. It

is therefore ordered and this ruling made that defendant Nunn's motion for separate trial is denied, but that the guilt or innocence of both Nunn and Stump of the principal and primary offense shall be first tried and submitted to and decided by the jury without disclosure to that body that there is any accusation of previous conviction as to defendant Stump, unless the course of trial shall compel such."

The facts in this case are not entirely undisputed, but the jury were entitled to believe the following events occurred: An undercover agent for the state liquor board, on February 1, 1942, purchased from a Mr. Nolan two pints of whiskey at the Kentucky apartments or rooms, operated by defendant Stump, after the agent had been admitted to the building by defendant Stump, and after he had stated he wanted to buy some whiskey. Nolan was called by Lilly Stump, who informed the agent that Nolan might help him. After some interrogation of the agent, Nolan went out of the room and shortly came back with two pints of whiskey, for which the agent paid him $3.50, or $1.75 a pint. On February 8, 1942, this agent purchased a pint of whiskey from defendant Nunn, at this same place, after defendant Stump had informed Nunn that the agent was all right. On February 15, 1942, this same agent bought a drink and a pint of whiskey from defendant Stump at the same place.

Lilly Stump testified that she owned the Kentucky apartments, and that Mr. Nunn worked for her. On February 20, 1942, these apartments were raided by enforcement officers of the liquor board, at which time there was found on the premises a quantity of liquor which belonged to defendants Stump and Nunn. There was, in our opinion, sufficient evidence from which the jury could find that defendants maintained this place for the sale of intoxicating liquor.

144

Defendants do not seriously contend that there was not sufficient evidence to take the case to the jury on the question of their guilt, but their main argument is in relation to the trial procedure.

We have heretofore set out the statute upon which this prosecution is based, and have set out the statement made by the trial court relative to the trial procedure.

The trial court probably would have been justified in following the procedure outlined by it at the beginning of the trial; however, during the course of the trial, defendant Stump took the stand, and, upon cross-examination, admitted that she had twice before been convicted of a violation of the state liquor law, as alleged in the information. This testimony went in without objection. The state, apparently not feeling sure that the admission of defendant Stump was sufficient to establish the prior convictions, at the close of defendants' case asked permission to introduce more definite evidence of Lilly Stump's prior convictions. The court permitted the state to offer additional testimony as to the prior convictions of defendant Stump, and, in explanation of what he had originally stated concerning the procedure to be followed, said:

"Now, I do not know what I shall take to be the significance of those words, 'unless the course of trial shall compel such.' It meant to me just what has occurred here,—defendant Stump became a witness, and at least these previous convictions have been alluded to in her cross-examination, and are now before the jury, and I understand she admitted both convictions. . . .

"There will go to this jury now the question of the guilt or innocence of the defendant Stump of the primary offense and of the aggravated offense, and of the guilt or innocence of the defendant Nunn of the primary offense."

Mr. Richards, counsel for defendants, objected to the introduction of this evidence.

The state then called the justice of the peace for Lowell precinct, and the clerk of the justice court of Everett precinct, who testified as to Lilly Stump's prior convictions.

The court submitted to the jury the question of the aggravated offense, with the following instruction:

"I instruct you that the state has also charged as to the defendant Lilly Stump that she was, prior to the filing of the information herein on the 27th day of February, 1942, previously convicted on the 10th day of May, 1939, in the justice's court of Lowell precinct of Snohomish county, Washington, of a violation of the Washington state liquor act by way of unlawful sale of liquor by the drink; and further, that she, the said Lilly Stump, was on the 15th day of September, 1939, in justice's court of Everett precinct, Snohomish county, Washington, convicted of a violation of the Washington state liquor act by way of having unlawful possession of intoxicating liquor with intent to sell.

"No such charges of previous conviction are made as to the Accused, Nunn, and in no wise are accusations of such as to the defendant Stump to enter into your consideration as to him, nor in any wise are they to affect your determination of his guilt or innocence of that crime with which he is here charged and for which he is on trial. Nor is any previous conviction alleged as to accused Stump to be deemed, if proven, any evidence of her guilt under the last previous instruction.

"These charges of previous conviction constitute what is known in law as a charge of 'aggravated offense,' or violation of the Washington state liquor act as to the defendant Stump.

"As to her you will answer by 'yes' or 'no' the interrogatories submitted you in the form of verdict. Your answer as to each interrogatory must be in accordance with the evidence bearing on the question of alleged prior conviction and dependent upon whether you are

convinced thereon beyond a reasonable doubt, for proof beyond a reasonable doubt alone will justify you in finding there was a previous conviction.

"Of course, in event you shall not find Lilly Stump guilty of possessing or keeping whiskey with intent to sell, as alleged, you are not required to answer either interrogatory as she could then in no event be guilty of the aggravated offense alleged."

The jury, by their verdict, found both defendants guilty of possessing liquor on premises conducted or maintained by them as principal or agent, with intent to sell the same. They also found, in answer to special interrogatories, that defendant Stump had been twice previously convicted, as alleged.

Defendants filed separate motions for new trial, which were denied. Judgment was then entered on the verdict. Defendant Stump was sentenced to nine months in the county jail, with allowance for good behavior, as provided by law, that being the sentence authorized for the aggravated offense. Defendant Nunn was sentenced to forty-five days in the county jail, with allowance for good behavior, and a fine of one hundred fifty dollars, that being the sentence authorized for the primary offense. From the judgment entered, defendants have appealed.

The assignments of error raise the following questions: (1) Did the court err in overruling appellant Nunn's motion for separate trial, his codefendant being charged with prior convictions in addition to the primary offense? (2) Does chapter 144, p. 518, of the laws of 1937, make an unlawful intent, without an overt act, a crime? (3) Was it prejudicial to appellant Stump or appellant Nunn to allow proof of the prior convictions of appellant Stump to be made during the trial of the primary offense, and to submit to the jury the question of the aggravated offense before they

had determined the question of the guilt or innocence of appellants of the primary offense? (4) Was there sufficient identification of appellant Stump as the person convicted in Lowell and Everett precincts? (5) Was appellant Stump entitled to have requested instruction No. 5 given?

We shall take up the assignments of error in the order heretofore stated.

Rem. Rev. Stat., § 2161 [P. C. § 9377], provides:

"When two or more defendants are indicted or informed against jointly, any defendant requesting it may, in the discretion of the trial judge be tried separately."

While this court will review a ruling of the trial court in refusing to grant a motion for separate trial, some very substantial reason must exist for so doing before the right will be exercised. *State v. Hurlbert,* 153 Wash. 60, 279 Pac. 123. In the cited case, we had the identical situation here presented. The information charged the husband with a former conviction of a violation of the prohibition act, in addition to charging the husband and wife jointly with the crime of bootlegging. The wife moved for a separate trial, based on the fact that the husband was charged with the prior conviction in addition to the primary offense. The motion was denied. We held the action of the trial court was proper. To the same effect is *State v. Andrich,* 135 Wash. 609, 238 Pac. 638.

In the instant case, the trial judge, in his instructions to the jury, informed them that the prior convictions alleged as to appellant Stump were not to be considered by them in their determination of the guilt or innocence of appellant Nunn of the crime with which he was charged. We are of the opinion that the procedure here followed finds ample support in our own decisions, and that appellant Nunn was not pre-

judiced thereby. The motion of appellant Nunn for a separate trial was properly denied.

In support of their contention that § 7306-92A, *supra*, is unconstitutional, appellants argue that, as it is now lawful to buy and have in possession intoxicating liquor, intent to sell cannot be shown merely by possession, but must be accompanied by some overt act, further arguing that intent, by itself, is never a punishable crime.

The basic elements of the crime defined in § 7306-92A, *supra*, have, in *State v. Pappas*, 195 Wash. 197, 80 P. (2d) 770, been declared to be as follows: First, possession of liquor on premises conducted or maintained by the accused; and, second, intent to sell it contrary to the provisions of the Washington state liquor law.

We are of the opinion that the argument of appellants is entirely answered in *State v. Burgess*, 111 Wash. 537, 191 Pac. 635, where the identical question was raised in relation to the liquor law of 1917, which provided that any person who opened up or conducted, either as principal or agent, any place for the unlawful sale of intoxicating liquor, was a jointist, and guilty of a felony. In the case cited, we stated:

"We are of the opinion that the opening up, conducting or maintaining of the place for the unlawful sale of intoxicating liquor are the overt acts for which the law seeks to punish, and that the intent of the accused is merely incidental thereto; just as intent is incidental to all overt criminal acts, to be considered in determining the question of guilt. We concede that the particular intent to sell intoxicating liquor at a particular place, that is, an intent to sell it generally in the sense of making a business of so doing at such place, unaccompanied by the overt act of opening up, conducting or maintaining a place in such manner as to evidence such intent, could not be rendered punish-

able by legislative enactment. But we do not think such is the meaning of this statute."

The cited case was followed and approved in *State v. Niccoli,* 115 Wash. 543, 197 Pac. 923.

In the instant case, it is the conducting and maintaining of a place by the accused which provides the overt act. There was ample evidence in this case for the jury to find that appellants did maintain a place at which they possessed liquor with intent to sell it unlawfully. We are satisfied the section referred to is not unconstitutional.

The more serious question is that presented by the procedure followed by the trial court in this case.

Appellants argue that they were prejudiced and the court committed error in permitting evidence of the aggravated offense to be submitted to the jury at the same time the question of the guilt or innocence of appellants of the primary offense was submitted. Appellants contend the trial court should have followed the procedure outlined by this court in *State v. Kirkpatrick,* 181 Wash. 313, 43 P. (2d) 44, involving the habitual criminal statute, it being argued by appellants that Rem. Rev. Stat. (Sup.), § 7306-92A, is comparable to Rem. Rev. Stat., § 2286 [P. C. § 8721], the habitual criminal statute.

Let us now examine the question of whether or not appellant Stump was prejudiced by the introduction of evidence of the aggravated offense before the jury had passed upon the primary offense. The state liquor law does not specifically provide any set trial procedure. No constitutional right of appellant is infringed by submitting the entire matter to the jury at the same time.

Such procedure has been followed under similar liquor statutes in other jurisdictions. *McCarren v.*

*United States* (C. C. A. 7th), 8 F. (2d) 113; *Smith v. United States* (C. C. A. 9th), 41 F. (2d) 215; *State v. Zink*, 102 W. Va. 619, 135 S. E. 905; *Grogan v. Commonwealth*, 222 Ky. 484, 1 S. W. (2d) 779; *State ex rel. Lockmiller v. Mayo*, 88 Fla. 96, 101 So. 228.

The procedure followed in the instant case was approved by this court in *State v. Dericho*, 107 Wash. 468, 182 Pac. 597, and *State v. McBroom*, 136 Wash. 453, 240 Pac. 562. In the last cited case, we also held that it was proper for the trial court to submit to the jury, as was done in the instant case, special findings relative to prior convictions.

The only argument which appellant advances against the procedure in this case is that there is no real distinction between the aggravated offense statute and the habitual criminal statute, and that, this court having adopted a certain procedure relative to the habitual criminal statute, the same method should be followed in cases of this character.

It is apparent that the practice in this state in this type of case has always been to submit evidence of prior convictions, under proper instructions to the jury, at the same time as the evidence of the primary offense is submitted. In other jurisdictions, the authority is almost universal (*Massey v. United States*, 281 Fed. 293) that it is the established rule, under statutes such as that with which we are here concerned, that, unless the statute designates a different mode of procedure, if the prosecution desires to invoke the serious punishment provided as to second and subsequent offenders, the indictment or information must allege the fact of prior conviction, and the allegation of such conviction must be proved in the trial to the jury.

It may be of interest to recall the basis of our procedure under the habitual criminal statute, as stated

in *State ex rel. Edelstein v. Huneke,* 140 Wash. 385, 249 Pac. 784, 250 Pac. 469. In the cited case, Edelstein had been tried and convicted of the crime of burglary. After the trial, an information was filed, charging him with being an habitual criminal. *State ex rel. Edelstein v. Huneke,* 138 Wash. 495, 244 Pac. 721. Upon a petition for rehearing, a new question was presented, which was deemed of sufficient importance to justify a hearing *En Banc.* The question raised was that the original charge of burglary should have contained the averments of previous convictions which would justify a sentence of being an habitual criminal, if it was sought to punish the accused as such, and that, since the original information contained none, it was then too late to try out the question. That was the only question passed upon in the later case (140 Wash. 385, 249 Pac. 784). The opinion states:

"The laws of 1903, p. 126, § 2, provided expressly for the practice here followed by the state.

"In 1909 (Laws of 1909, p. 899) the law was changed to Rem. Comp. Stat., § 2286, as follows: [Here follows a statement of the provisions of the habitual criminal statute, which are the same as the present statute.]

"It will be seen that this statute makes no provision for the procedure to be followed in such cases. Petitioner claims that since by Rem. Comp. Stat., § 143 [P. C. § 8252], the common law is the rule of decision in this state, and by § 2299 [P. C. § 8734], the provisions thereof supplement the penal statutes, in the absence of statutory provision regulating the procedure we must approve and sanction only that procedure that is rooted in the common law itself.

"The industry and research of counsel has fortified this argument with a wealth of decisions which announce the principle firmly ingrained in our criminal law that one may not be sentenced for a second of-

fense, unless the indictment aver and the evidence prove that it is a second offense. The authorities cited are replete with statements of the court to the effect that, since the punishment is greater for a second offense, such an allegation is a material part of the indictment. No contrary rule appears to be supported by authority.

"None of the cases cited, however, appear to determine the precise point presented here, which may be stated as follows: Is any constitutional right of a defendant invaded by charging and trying the two issues separately [the substantive offense and the prior convictions], if no statute prescribes the form of procedure and both be determined before valid sentence passed?

"It has been the custom in this state to charge defendants in this manner since the passage of the act of 1903, *supra;* when the act of 1909, *supra,* was passed the prosecutors still continued to charge in the same manner. *State v. Gustafson,* 87 Wash. 613, 152 Pac. 335; *State v. Cotz,* 94 Wash. 163, 161 Pac. 1191; *State v. Kelch,* 114 Wash. 601, 195 Pac. 1023."

The opinion continues:

"While many questions have arisen under the act, it must be admitted that in none of the cases that have so arisen since the act of 1909, *supra,* has the precise question here presented been decided by us and it is incumbent upon us therefore for the first time to determine this matter. However, a practice long established in this state, which neither rests upon nor conflicts with any statutory provision, should not lightly be set aside unless a consideration of the reasons urged for its rejection show that some right of petitioner has been violated."

We then held that the procedure there followed protected all the rights of the defendant, as well as the method contended for by the defendant, and that no rights of petitioner were violated by the procedure followed. Thus we have the history of the procedure

followed in habitual criminal cases, which is apparently based very largely on a practice followed by the prosecutors in habitual criminal cases, which practice was based upon the 1903 act, which had required such procedure.

Notwithstanding the procedure followed in habitual criminal cases, we have not followed that procedure in cases such as the instant case. See *State v. Dericho, supra,* and *State v. McBroom, supra,* the former case decided in 1919, and the latter in 1925.

We think a close study of the habitual criminal act and its purpose, as construed by this court, and the aggravated offense statute here under consideration, will reveal sufficient difference to justify a different procedure. We call attention to the distinction made by the Kansas court in *State v. Jones,* 147 Kan. 8, 75 P. (2d) 230, and *Levell v. Simpson,* 142 Kan. 892, 52 P. (2d) 372.

While we do not desire to depart from the manner of conducting trial established in habitual criminal cases, neither do we feel that there is any compelling reason why we should depart from the procedure followed in the class of cases here presented, which has been followed before and since the procedure relative to habitual criminal cases was followed. On this phase of the case, we conclude that, in prosecutions under the aggravated offense statutes, prior offenses should be alleged in the information, and proof thereof submitted to the jury, under proper instructions, along with proof of the primary offense charged. In other words, we do not feel compelled to hold, nor do we feel that there is a sufficient reason for holding, that the procedure followed in habitual criminal cases should be followed in this type of case.

What we have said relative to procedure applies

also to appellant Nunn, in addition to what was stated in regard to his motion for separate trial.

■ We next take up the contention of appellant Stump that there was not sufficient evidence to identify her as the person convicted in Lowell and Everett precincts. We are convinced that, from the admission made by Lilly Stump and the testimony of the justice of the peace for Lowell precinct and the clerk of the justice court of Everett precinct, the jury were warranted in finding that Lilly Stump was the person convicted as alleged in the information.

■ Appellant Stump also claims error because of the court's refusal to give requested instruction No. 5, which informed the jury that no inference of guilt should arise by reason of her failing to take the stand in her own behalf on the trial of the aggravated offense charge. We feel there is no merit in this contention. Appellant Stump took the stand in her own behalf, and while on the stand admitted these prior convictions.

We may say generally, in conclusion, that the statement made by the trial court relative to the procedure to be followed was not, in our opinion, based upon a belief that the court was required to follow the procedure used in habitual criminal cases. However, when appellant Stump on cross-examination admitted the alleged prior convictions, the court determined to allow the state to make more specific proof of such prior convictions, and to let all the evidence go to the jury. For the reasons herein stated, we think the court would, in the first instance, have been justified in allowing evidence of prior convictions to go to the jury, and, in view of what happened in the trial, we are further of the opinion the court was justified in allowing the change in procedure.

We are firmly convinced that the rights of appellants were amply safeguarded in this case, and that they were in all respects given a fair trial.

The judgment of the trial court is affirmed.

ROBINSON, C. J., STEINERT, MILLARD, and MALLERY, JJ., concur.

February 19, 1943. Petition for rehearing denied.

[1]Reported in 132 P. (2d) 735.