Argued January 9; reversed May 20, 1947

# MACOMBER *v.* STATE ET AL.

(180 P. (2d) 793)

*Rex Kimmell,* Assistant Attorney General, of Salem (George Neuner, Attorney General, of Salem, on brief), for appellants.

*Ben Anderson,* of Portland (with William P. Lord, of Portland, on brief), for respondent.

Before Rossman, Chief Justice, and Lusk, Belt, Kelly, Bailey and Hay, Justices.

ROSSMAN, C. J.

This is an appeal by the defendants from a judgment of the Circuit Court for Marion County, entered April

15, 1946, which directed the discharge of the plaintiff from incarceration in the state prison under a judgment entered by the Circuit Court for Polk County October 23, 1939. The sentence under which the plaintiff (respondent) was held, being for 39 years and 360 days, was imposed pursuant to § 26-2802, O. C. L. A., which specifies the penalty upon a third conviction of a felony. The defendants (appellants) are the State of Oregon and Mr. George Alexander, warden of the state prison.

The entry of the order of the Circuit Court for Marion County, attacked by this appeal, was preceded by a petition for a writ of habeas corpus which averred that the judgment order of the Circuit Court for Polk County, under which the plaintiff was imprisoned, was void. There are no issues before us concerning the pleadings and it will suffice to say that the petition alleged that the judgment order of the Circuit Court for Polk County was void and that the return maintained its validity.

Before stating the issues presented by this appeal we shall mention § 26-2804, O. C. L. A. It says that the district attorney must file against multiple offenders informations accusing them of their previous felony convictions. Opportunity is afforded the accused to enter a plea to the information and secure a trial upon the charge. We shall now state the issues presented by the assignment of error. They are: Assuming that the district attorney has knowledge of one or more prior convictions of a person presently found guilty of a felony, does his failure to file an information under § 26-2804, O. C. L. A., before sentence is imposed, bar him from filing the information after sentence has been imposed; and does the court's imposition of

the sentence deprive it of jurisdiction to proceed upon the information when it is filed.

The facts disclosed by the record reveal the following situation: May 21, 1939, the grand jury for Polk County returned as a true bill an indictment which charged the respondent with the crime of grand larceny. October 19, 1939, after trial by jury, a judgment was entered by the Honorable Arlie G. Walker, Judge of the Circuit Court for Polk County, which adjudged the respondent guilty of the crime mentioned in the indictment and sentenced him to imprisonment for a term of five years. On the same day, and after sentence was imposed, the district attorney for Polk County, pursuant to § 26-2804, O. C. L. A., filed an information which averred that the respondent had been adjudged guilty three times of the commission of felonies: (1) a judgment entered September 15, 1931, by the Circuit Court for Linn County which found him guilty of grand larceny; (2) a judgment entered May 13, 1933, by the Circuit Court for Polk County which found him guilty of the crime of assault with intent to rob; and (3) the judgment of October 19, 1939, which we have just mentioned. Upon his arraignment under the information the respondent appeared in person and by counsel. He admitted that he was the person described in the three judgment orders. Following the arraignment Judge Walker, on October 23, 1939, entered the judgment now under attack. It vacated the judgment of October 19, 1939, and sentenced the respondent to imprisonment for 39 years and 360 days. He had served five days under the judgment of October 19. The sentence imposed, it is conceded, was the one required by § 26-2802, O. C. L. A., provided the court had jurisdiction on October 23 over the cause. No

appeal was taken from the judgment of October 19, nor from the one of October 23.

September 25, 1945, after the respondent had fully served the sentence imposed by the order of October 19, 1939 (which was vacated by the order of October 23) he filed in the Circuit Court for Marion County the petition for the writ of habeas corpus which we have already mentioned. January 23, 1946, a trial was held before the Honorable George R. Duncan, one of the Circuit Court judges for Marion County, upon the issues submitted by the petition and return. It resulted in the entry of the judgment now under attack and held void the judgment of October 23, 1939.

The respondent contends that when the circuit court entered the judgment of October 19, 1939, the district attorney and the trial judge both knew that the respondent had been twice before adjudged guilty of felonies. He insists that under those purported circumstances the entry of that judgment exhausted the court's jurisdiction and that, therefore, it had no jurisdiction to enter the judgment of October 23, 1939.

We shall now mention the provisions of our statutes which are applicable to recidivists, but before doing so draw attention to the fact that the 1947 legislative assembly made material amendments to our laws upon this subject. Section 26-2802, O. C. L. A., says:

"A person who, after having been two times convicted within this state of felonies, * * * commits a felony within this state, shall be punished, upon conviction of such third, or subsequent, offense, as follows: * * *."

Section 26-2804, O. C. L. A., says:

"If at any time, either after sentence or conviction, it shall appear that a person convicted of

a felony has previously been convicted of crimes as set forth in this act, it shall be the duty of the district attorney of the county in which such conviction was had to file an information, accusing the said person of such previous convictions. Whereupon, the court in which such conviction was had shall cause the said person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegations contained in such information and of his right to be tried as to the truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such information or not. * * * If the jury finds that he is the same person or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he is the same person, the court shall sentence him to the punishment hereinbefore provided, and shall vacate the previous sentence, deducting from the new sentence all time actually served on the sentence so vacated * * *.''

The respondent argues that since § 26-2804 says: ''If at any time, either after sentence or conviction, it shall appear that a person convicted of a felony has previously been convicted,'' an information can not be filed after sentence if the district attorney knew, when sentence was pronounced, that the prisoner had previously been convicted of a felony.

Judge Duncan, before entering his attacked judgment (the one of April 15, 1946), in a memorandum opinion, said:

''Prior to the time plaintiff was convicted of the crime of grand larceny for which he was sentenced to five years on October 19, 1939, the district attorney handling that prosecution had knowledge of plaintiff's two previous felony convictions of September 15, 1931 and of May 13, 1933.''

Based upon that premise, the judgment order of October 23, 1939, was held void. Nothing was said in the memorandum opinion indicating that Judge Walker knew of the respondent's previous convictions.

As proof that the district attorney and Judge Walker knew on October 19, 1939, when the respondent was sentenced to five years in the state prison, that he had been twice previously convicted of felonies, the respondent depends upon a motion for a change of venue which he filed October 6, 1939, with the clerk of the Circuit Court for Polk County. At that time the respondent was awaiting trial upon the indictment which eventually resulted in the judgment orders of October 19 and October 23, 1939. The motion charged that the respondent could not secure a fair trial in Polk County and was accompanied with an affidavit signed by himself which stated that because of newspaper articles circulated in Polk County, a fair trial by a Polk County jury was impossible. It mentioned particularly an article published August 3, 1939, and, concerning it, said:

"The said article contains a statement that I had received prison sentences from Linn, Tillamook and Polk Counties and also other charges of greater or less moment and seriousness. A copy of said article, marked Exhibit A, is hereto attached and is incorporated in this affidavit by reference."

The copy is a newspaper account of the respondent's arrest, of the crime attributed to him and of his criminal record. The part of the article material to our purposes says:

"Macomber has received prison sentences from Linn, Tillamook and Polk Counties and another conviction of a felony will put him in line for a life sentence under the Habitual Criminal Act. Last

spring he was arrested when he was driving a car equipped with tires and accessories stripped from a car that had been stolen in Independence and abandoned near Falls City. He was also charged with the possession of an illegal gun, as ex-convicts may not possess firearms with barrels less than twelve inches long. He apparently convinced the grand jury that he had bought the tires and accessories and that the gun would not shoot.''

The affidavit did not state whether the newspaper account was true or false; nor did it say whether or not it was true that the defendant had been convicted of any crimes prior to his indictment. What course was taken with the motion and the affidavit is not shown by the record. The latter does not indicate whether or not the motion and its accompanying affidavit were served upon the district attorney. Nor does it show whether or not either came to the attention of the trial judge. The record contains no order of any kind based upon the motion, and it may be that the latter was waived.

The respondent contends that the affidavit just reviewed informed both the district attorney and the trial judge that he had been twice previously convicted. He also contends that, since the conviction of May 13, 1933, occurred in the Circuit Court for Polk County, that being the county in which the recidivist judgment was entered, the trial judge had actual knowledge of it. It is these two circumstances upon which the respondent depends to show that when the judgment order of October 19, 1939, was entered both the district attorney and the trial judge had knowledge of the respondent's two prior convictions.

■ The state's brief, referring to the statement in the memorandum opinion previously quoted, which

says: ''The district attorney handling that prosecution had knowledge of plaintiff's two felony convictions,'' says:

> ''The insufficiency of the evidence to support such findings of fact could well be urged on this appeal as grounds for reversal. However, appellant contends, and contended in the trial court, that although such fact be assumed to have been established, the conclusion of law above mentioned is a non sequitur and is erroneous.''

In proceeding we shall assume, but not decide, that the above circumstances charged the district attorney with knowledge of the respondent's criminal record. It must be observed that the memorandum opinion did not find that Judge Walker had knowledge of the respondent's two previous felony convictions when he entered the Judgment of October 19. In view of the presumption ''that official duty has been regularly performed'' (§ 2-407, O. C. L. A.; Wigmore on Evidence, 3d ed., § 2534; and 31 C. J. S., Evidence, § 145, p. 792), we are clearly warranted in believing that, since the mandatory sentence required by § 26-2802, O. C. L. A., was not imposed upon the respondent October 19, 1939, Judge Walker was unaware of the respondent's felony record.

In proceeding we shall assume that the district attorney knew on October 19 when the respondent was sentenced to prison for five years that he had been previously convicted of a felony or felonies. We find it to be a fact, however, that the sentencing judge had no knowledge of the respondent's criminal record. Immediately following the entry of the judgment of October 19 a commitment was issued and the respondent was remanded to the state prison. Following the

filing of the information he was returned to Polk County.

The question before us is whether or not the failure of a district attorney, who knows of a convict's felonious record, to file an information before sentence is imposed upon a new conviction, deprives the court of jurisdiction to impose later the sentence demanded by § 26-2802, O. C. L. A., when the information is filed.

·Our Habitual Criminal Act came to us from the State of New York (*State v. Smith,* 128 Or. 515, 273 P. 323) where it was known as the Baumes Laws. The precursors of the Baumes Laws run back to the early days of the Republic. In *Graham v. West Virginia,* 224 U. S. 616, 56 L. Ed. 917, 32 S. Ct. 583, it is said: "Statutes providing for such increased punishment were enacted in Virginia and New York as early as 1796, and in Massachusetts in 1804." Shortly before our statute went into effect the constitutionality of the Baumes Laws was upheld: *People v. Gowasky,* 244 N. Y. 451, 155 N. E. 737, 58 A. L. R. 9 (annotated); see also *Graham v. West Virginia,* supra. The validity of our act has been sustained by this court: *State v. Smith,* supra.

■ Since the method chosen for attacking the judgment of October 23, 1939, is habeas corpus, it can not succeed unless the attacked judgment is void: *Garner v. Alexander,* 167 Or. 670, 120 P. (2d) 238, and *Kelley v. Meyers,* 124 Or. 322, 263 P. 903, 56 A. L. R. 661. As was said in the Garner decision:

> "Proceedings in habeas corpus are in the nature of a collateral attack, and consequently errors or irregularities which render a judgment voidable can not be reached by habeas corpus."

Following its entry, the judgment of October 23, 1939, could have been challenged by an appeal, and everything now said against it could have then been urged. Normally, the extraordinary remedy of habeas corpus is not available to those who neglected to appeal; but, since the State does not insist upon that rule of procedure, we shall assume, without deciding, that habeas corpus is the proper remedy in this instance.

■ The imposition upon repeaters of the penalties specified in §§ 26-2801, 26-2802 and 26-2803 is not discretionary with the sentencing judge, but is a mandatory duty. The exact words of § 26-2802 are:

> "A person who after having been two times convicted * * * shall be punished, upon conviction of such third or subsequent offense, as follows: * * * *."

That provision, it will be observed, confers no discretion upon the sentencing judge, but renders it his mandatory duty to impose that specific penalty, and no other. Courts which have construed Habitual Criminal acts containing provisions similar to ours uniformly deem the penalties mandatory. Out of the many available decisions, we cite *Dodd v. Martin*, 248 N. Y. 394, 162 N. E. 293, *State v. Graham*, 68 W. Va. 248, 69 S. E. 1010, 40 L. R. A. (N. S.) 924, and *State v. Kelch*, 114 Wash. 601, 195 P. 1023. The Dodd case was based upon mandamus to compel the sentencing judge to proceed in harmony with the Baumes Laws; the decision said: "The Baumes Laws withdraw all discretion from the court." An order of the lower court which granted the writ was affirmed. The second of the above decisions says:

> "They are merely ancillary proceedings for the rightful sentence which the law mandatorily enjoins upon those already held."

And in the third, the court declared:

"Nor was it erroneous for another judge of the Superior Court of that county to pass sentence upon the person found guilty of being an habitual criminal, for the reason that there is no discretion involved. The sentence to be imposed was mandatory."

In *State v. DeMarsche,* 68 S. D. 250, 1 N. W. (2d) 67, the court said:

"Under the New York law the enhanced punishment for the subsequent offense is fixed and mandatory; under our law it is not, but is left to the discretion of the trial court. The legislature in the state of New York has made it the imperative duty of the court to impose upon the habitual offender the penalty it has fixed. People v. Gowasky, 244 N. Y. 451, 155 N. E. 737, 58 A. L. R. 9. So also has the law of Oregon, State v. Smith, 128 Or. 515, 273 P. 323; and Florida, Cross v. State, 96 Fla. 768, 119 So. 380. The above cases perhaps justify the conclusion that in New York, Oregon and Florida, the prior convictions may be established and the enhanced penalty imposed under provisions similar to subsection three of our act after conviction and sentence on the principal offense, and even though the prior convictions were known to the court at the time of passing sentence on the principal offense."

That opinion correctly interprets this court's holding in *State v. Smith.*

Accordingly, it is clear that the judgment which Judge Walker entered October 23, 1939, and which the respondent attacks as void, is the identical one which the legislature intended should be entered, unless the part of § 26-2804, upon which the respondent relies, coupled with the action taken by the court on October

19, 1939, deprived it of power to put into effect the legislative will.

■■ Normally, after a defendant has been adjudged guilty of a crime and has been committed to prison, the court which sentenced him is without power to set aside the judgment of guilt and impose a greater sentence. Section 26-2804, O. C. L. A., however, authorizes that very thing to be done, and, as we have seen, the validity of that kind of legislation has been consistently sustained. The section just cited says: "If at any time, either after sentence or conviction, it shall appear that a person convicted of a felony has previously been convicted" an information shall be filed setting forth the convictions and, upon proof of the averments, the increased penalty exacted by §§ 26-2801, 26-2802 and 26-2803 shall be imposed. Rendering it clear that the words "either after sentence or conviction" include the period of time while the convict is serving his sentence in prison after commitment thereto is the following, also taken from § 26-2804:

> "Whenever it shall become known to any warden or prison, probation, parole or police officer * * * that any person charged with or convicted of a felony has been previously convicted * * * it shall become his duty forthwith to report the facts to the district attorney of the county from which he was sentenced."

The courts from the very inception of habitual criminal legislation met with no difficulty in administering provisions of the kind contained in § 26-2804; that is, in reassuming jurisdiction over the defendant after his commitment to prison. In *Ross's Case,* 2 Pick. (Mass.) 165, decided in 1824, the prisoner was brought from the state prison to face an information which accused him of being a repeater. In that respect the situation

in the instant case is the counterpart of the one in that case. The Massachusetts legislature, by an act approved February 23, 1818, provided for increased punishment upon second and third convictions. The act recognized that the previous conviction "may not be known" at the time of sentencing and, therefore, imposed a duty upon the warden of the state prison to notify the attorney general if "any convict received into the same * * * shall have before been sentenced." It made it the duty of the attorney general, upon receipt of such data, to file an information in the Supreme Judicial Court setting forth the convict's criminal record, and empowered the court, if satisfied of the truth of the information, to award "against such convict the residue of the punishment provided in the foregoing section." In September, 1818, Ross was convicted of a felony and was committed to the state prison. At the October term, after Ross had been committed to the prison, the attorney general filed an information which stated that, unbeknown to him and the court at the time of sentencing, Ross had been convicted in February, 1816, of a felony. The fact that the prosecuting attorney was ignorant of the prior conviction is the only circumstance which distinguishes that case from the one at bar. In *Ross's Case*, as in the present, the sentencing court was unaware of the prisoner's previous record. After the information was filed, Ross was brought before the court and confessed that the facts stated in the information were true, "whereupon", so the report of the case says, "the court sentenced him to be punished by solitary confinement for seven days, and afterwards by confinement to hard labor for four years; this last sentence to be executed upon him immediately after the expiration of the sentence on which he then stood committed." Still later Ross filed a petition for a

writ of habeas corpus and the proceedings resulting therefrom yielded the decision which we are now reviewing. The court sustained the increased sentence, and in so doing, said:

"As if a law were made, that a person under a certain age committing a crime should receive a mild punishment, and that a person over that age committing the same crime should be punished severely; and further, that if it should be found, after the mild punishment had been awarded, that the culprit was over the age prescribed, then the severe punishment should be inflicted, this would not be ex post facto; because the extent of the punishment was declared before the offence was committed."

Further, the court said:

"The only question is, whether he is such a person as ought to have been sentenced, on his last conviction to additional punishment, if the fact of a former conviction had been known to the court."

Since the statute intended that Ross should have received the increased penalty upon his second conviction, the court upheld the sentence which was imposed after the information had been filed.

It is evident that the court, in the decision just reviewed, believed that the entry of the original judgment followed by Ross's commitment to prison did not terminate the court's jurisdiction over him. Manifestly, the court believed that the repeater law continued the court's jurisdiction over the convict for the purpose of enabling it to impose the mandatory penalty any time that it became established, after an information was filed, that the convict was a repeater.

*Graham v. West Virginia,* supra, was before the United States Supreme Court on a writ of error which

attacked the constitutionality of a West Virginia statute which prescribed the penalties to be meted out to recidivists. The plaintiff in error, Graham, was incarcerated in the West Virginia penitentiary under a life sentence imposed upon him pursuant to the demands of that statute. The latter rendered the imposition of a life penalty mandatory upon those twice previously convicted of felonies. Judgments finding Graham guilty of felonies had been entered by West Virginia courts in April, 1898, and in April, 1901. In each instance he was sentenced to imprisonment in the West Virginia penitentiary. In September of 1907 he was adjudged guilty of a felony by the Circuit Court of West Virginia for Wood County, and, pursuant to that judgment, was committed to the West Virginia penitentiary. In February, 1908, after Graham had been received in the penitentiary which was located in Marshall County, the prosecuting attorney for Marshall County presented an information to the circuit court for that county which alleged that Graham had been twice previously convicted of felonies, being the convictions of 1898 and 1901. A West Virginia statute conferred jurisdiction upon the Circuit Court for Marshall County over all proceedings affecting convicts. After Graham had plead not guilty to the information the issue was tried and he was found to be the man against whom the above-mentioned judgments of guilt were entered. At that juncture the sentence of life imprisonment was pronounced. It will be observed that, as in Ross's Case and also as in the case at bar, the information was filed after the convict had been committed to prison. Likewise, as in Ross's Case, the increased penalty was not imposed by the court which had tried the main case, but by a different court. The Supreme Court of Appeals of West Vir-

ginia, in sustaining Graham's increased penalty (*State v. Graham*, supra,) said:

> "Thus he has been classed with those over whom, by law, hangs additional imprisonment. It only remains for him to be properly identified as belonging to that class. The identification may be at the time of the trial for the offense, if the facts are then known and alleged; or it may be later, at the penitentiary, when the facts develop. * * *

> "It is said that the trial and sentence in Wood County foreclosed and forever adjudged the question of length of sentence."

It will be observed that the same contention is presented in the case at bar. Continuing, the West Virginia Court said:

> "If the facts justifying the longer sentence had in that trial been alleged and proved, that rightful sentence could very properly have been imposed there. But the Legislature has seen fit to provide for the imposition of such sentence after trial for the crime to which it may properly attach, whenever it has not been imposed in the trial court. We observe no constitutional restrictions against the statute which has been enacted in this particular. Since the mere imposing of the additional sentence warranted by law is not a holding to answer for crime, is not a second jeopardy or punishment for the offense itself to which the sentence rightfully belongs, and is clearly due process of law, what constitutional limitation has been placed upon legislation in this particular? None."

■ We now return to the decision of the United States Supreme Court. It was written by Mr. Justice Hughes, later Mr. Chief Justice Hughes. It found no error in the opinion from which we have just quoted.

From the Federal Supreme Court's decision, we quote:

"In the case at bar, the record is silent upon the question of whether the fact of the former convictions was known at the time of the last indictment and trial. This, however, cannot be regarded as important from the constitutional standpoint. The indictment did not allege the prior convictions; the issue was not involved in the trial of the indictment and the court could not have considered these convictions in imposing sentence. State v. Davis, 68 W. Va. 142, 150, 151. They were not considered until the subsequent proceeding was had. Doubtless, as has been said, the object in providing the alternative proceeding is to make sure that old offenders should not be immune from the increased punishment because their former conviction was not known when they were last tried. But this does not define the limit of state power. Although the State may properly provide for the allegation of the former conviction in the indictment, for a finding by the jury on this point in connection with its verdict as to guilt and thereupon for the imposition of the full sentence prescribed, there is no constitutional mandate which requires the State to adopt this course even where the former conviction is known. It may be convenient practice, but it is not obligatory. This conclusion necessarily follows from the distinct nature of the issue and from the fact, so frequently stated, that it does not relate to the commission of the offense, but goes to the punishment only, and therefore it may be subsequently decided."

It will be noticed that the decision cited *State v. Davis*, 68 W. Va. 142, 69 S. E. 639, 32 L. R. A. (N. S.) 501, Ann. Cas. 1912A, 996, to support the conclusion that the West Virginia Circuit Court for Wood County, when it entered the judgment of September, 1907, did not take into consideration Graham's two previous convictions. The Davis decision held that an augmented penalty can not be imposed upon multiple offenders

unless the former conviction is both plead and proved. It also held:

> "The court could not take judicial notice of a former conviction, as was apparently done in this case, even though such former conviction may have been had in the same court, and on a previous day of the term at which the present trial was had. Pickens v. Boom Co., 66 W. Va. 10; United States v. Bliss, 172 U. S. 326."

The same principles are equally applicable to the instant case. Since, on October 19, 1939, when Judge Walker imposed the five-year sentence, no information had been filed accusing the respondent of being an habitual offender, Judge Walker could not have employed any of the powers granted by the Habitual Criminal Act. And even if such an information had then been pending, no sentencing judge could rightfully have rummaged through his recollection and, upon recalling a previous conviction, take judicial notice of it as the basis for a greater sentence.

It will be observed that the facts in the West Virginia case have their counterpart in the case before us, with the exception that in that case "the record is silent upon the question whether the fact of the former convictions was known at the time of the last indictment and trial." In the present instance, we are assuming that the district attorney for Polk County knew at the time of the sentencing of the respondent's former convictions. But it will be recalled that both the West Virginia court and the Federal Supreme Court attached no importance to the fact concerning which the record was silent. Referring to it, Mr. Justice Hughes' decision said: "This, however, cannot be regarded as important from the constitutional standpoint."

■ From the three decisions just reviewed it is evident that no constitutional principle was violated when Judge Walker entered the judgment of October 23, 1939, which the Circuit Court for Marion County held void in the decision challenged by this appeal. Those three decisions could be materially augmented by others; we shall presently cite some of the additional ones. The issue before us, therefore, is not one of constitutional law, but of statutory construction, and may be stated thus: Do the words found in § 26-2804 which read, "If at any time, either after sentence or conviction, it shall appear that a person convicted of a felony has previously been convicted," relate only to the term "the district attorney" which is found in the same sentence, or do the words first quoted refer generally to the entire proceeding. If the words "at any time, either after sentence or conviction, it shall appear" refer only to the district attorney, then a greater power has been conferred upon that official than upon the judges of our courts. If that construction is the proper one, it necessarily follows that, although it is the imperative duty of the sentencing judge to impose the increased penalty upon old offenders against whom the district attorney files informations, the district attorney in all other instances has the power to thwart the purpose of the act by neglecting to file informations. A statute would surely be novel which designated a penalty in such plain, mandatory words that a recalcitrant judge can be forced by mandamus to impose it (*Dodd v. Martin,* supra,) and yet leave a district attorney free to neglect a subordinate task essential to the court's power to act. But it is evident that the act renders it the duty of district attorneys to file informations against old offenders, for if that is not so § 26-2804 would not require the warden of the

state prison and all other prison, probation, parole, police and other peace officers who know that one recently convicted of a felony is a repeater, "forthwith to report the facts to the district attorney of the county from which he was sentenced." Since the statute creates mandatory penalties, nothing would be gained by exacting the reports from the peace officers if the district attorney, upon their receipt, could ignore them. Accordingly, it does not seem that the words "at any time, either after sentence or conviction, it shall appear" refer only to the district attorney. But, before reaching a conclusion, we shall turn to the decisions of other courts which dealt with similar problems: *Ryan v. Nygaard*, 70 N. D. 687, 297 N. W. 694; *Dodd v. Martin*, 248 N. Y. 394, 162 N. E. 293; *People v. Daiboch*, 265 N. Y. 125, 191 N. E. 859; *Commonwealth ex rel. Foster v. Ashe*, 146 Pa. Super. 482, 23 Atl. (2d) 245; *Smalley v. People*, 96 Colo. 361, 43 P. (2d) 385; *People v. Wolff*, 111 Colo. 46, 137 P. (2d) 693; *State v. King*, 18 Wash. (2d) 747, 140 P. (2d) 283; *State ex rel. Edelstein v. Huneke*, 138 Wash. 495, 244 P. 721, 249 P. 784, 250 P. 469; *Ex parte Lombardi*, 13 Wash. (2d) 1, 123 P. (2d) 764; *State v. Kelch*, 114 Wash. 601, 195 P. 1023.

In *Ryan v. Nygaard* the North Dakota statute read:

"If at any time before judgment and sentence, or at any time after judgment and sentence but before such judgment and sentence is fully executed, it shall appear that one convicted of a felony, has been previously convicted of crimes as set forth in sections one, or two of this act, it shall be the duty of the State's Attorney * * * to file an information * * *."

The succeeding procedure is substantially the same as that in Oregon when an information has been filed.

Nygaard was before the district court of North Dakota upon two informations each of which accused him of a felony. October 4, 1939, he plead guilty to each and received two sentences, five years and two years, to run concurrently. At the time of the sentencing he informed the court that in 1929 and in 1935 he was convicted of felonies in the State of Washington. After the district court had pronounced its sentences, the judge directed the state's attorney to file an information accusing Nygaard of being an habitual criminal. October 9, 1939, the information was filed and after Nygaard had plead guilty the court vacated the five-year sentence, imposed a term of eight years and directed that it run concurrently with the two-year sentence, which the court did not vacate. Some time later Nygaard petitioned the North Dakota Supreme Court for a writ of habeas corpus and upon the hearing thereon submitted substantially the same contentions as those which are before us. He claimed that after the above proceedings had been conducted there remained as valid only the two-year term, and that, since he had been incarcerated for that period, he was entitled to his liberty. In denying the writ, the court said that if the state's attorney possesses adequate knowledge concerning prior convictions of the prisoner at bar, the information should be filed before sentence is pronounced. The court, however, commented upon the fact, that although the prosecuting attorney may know that the prisoner has a felonious record, he sometimes lacks proof of the prior convictions or does not know their actual number. We now quote from the opinion:

"In such cases he might, with entire propriety, permit sentence to be pronounced, and after obtaining the requisite information as to the number of

prior convictions, he might file an information setting forth the facts after judgment and sentence had been imposed. The failure to file an information under the provisions of chapter 126, Laws 1927, before judgment of conviction is rendered will in no case deprive the court of jurisdiction of an action instituted by an information presented after judgment and sentence has been pronounced. By the express provision of the statute, the district court is authorized to allow an information to be filed after judgment and sentence has been pronounced and to conduct a hearing to ascertain the truth of the accusations made as to the prior convictions, and if it is ascertained and determined that the defendant previously has been convicted of felonies so as to render him subject to the added punishment prescribed, then the court is authorized to vacate any previous judgment and sentence that may have been entered and render a new judgment and sentence under the provisions of said chapter 126 and in such judgment and sentence impose such added punishment as the facts may warrant under the law.

"The question is whether the district court of Ward county in the proceedings had under said chapter 126 acted within or without its jurisdiction. If it acted within its jurisdiction then the judgment of conviction rendered on October 9th is not subject to attack in this proceeding. Clearly that court acted within its jurisdiction. It had jurisdiction of the person of the defendant and of the subject matter. It had general jurisdiction of the offense with which the petitioner was charged and it had jurisdiction of an action instituted under said chapter 126, and authority to determine questions of law and fact that might arise in such action."

*Dodd v. Martin,* which the parties cite as 224 App. Div. 179, 229 N. Y. S. 131, was before the court upon an application by the district attorney of Kings County for a peremptory mandamus order against George W.

Martin, county judge of Kings County. The application was allowed, the judge appealed, and that circumstance resulted in the decisions which we shall review. The facts were that one Taglerine was convicted in New York of burglary July 16, 1917. Nine years later, October 21, 1926, he was indicted in Kings County upon two felony charges, one being burglary and the other grand larceny. The indictment accused him of being a second offender. Thus his first offense was known when the indictment was prepared. October 21, 1926, he was arraigned and pleaded guilty to burglary, but as a first offender. There can be no doubt, as we have already indicated, that it was known at that time that Taglerine was a second offender. November 16, 1926, Judge Martin sentenced him as a first offender to a term of two and one-half years in prison. September 19, 1927, the prison warden reported to the district attorney the conviction of July 16, 1917. Pursuant to the demands of the New York Habitual Criminal Act, the district attorney, on December 7, 1927, filed an information based upon the conviction of July 16, 1917, which alleged that Taglerine was a second offender. December 13, 1927, the court directed the warden to produce Taglerine for trial on the information. July 20, 1928, Taglerine, by a court order, was permitted to withdraw the plea which he entered October 21, 1926, and plead guilty to petit larceny; thereupon he was sentenced to a term of nine months in the county jail. After that course had been taken, the district attorney made the application for a peremptory mandamus order which we have already mentioned. It sought a direction to Judge Martin to vacate the order of January 20, 1928, restore the plea of guilty of October 21, 1926, and arraign Taglerine on the information. The lower court granted the order and the Appellate Divi-

sion affirmed it in the decision above cited. Concerning that decision, the respondent says: "The case is weakened by a strong dissent." One judge, it is true, dissented. Seemingly, the parties to this appeal overlooked the fact that *Dodd v. Martin* came before the Court of Appeals. That court affirmed the decision just mentioned. See 248 N. Y. 394, 162 N. E. 293. Three judges dissented. Before proceeding further with *Dodd v. Martin,* we take note of the fact that *People v. Daiboch,* 265 N. Y. 125, 191 N. E. 859, contained features similar to those before us and approvingly cited *Dodd v. Martin.* It was a unanimous decision of the Court of Appeals. We now return to the Court of Appeals' decision in *Dodd v. Martin.* The majority said:

"After judgment on a plea of guilty and the beginning of the term of imprisonment the court was without jurisdiction to permit the defendant to change his plea."

In that manner the court disposed of Taglerine's belated effort to change his plea. Concerning Taglerine's effort to plead guilty as a first offender, when he was in truth a self-confessed second offender, the majority said:

"The Baumes Laws withdraw all discretion from the court in such cases. In this view of the law, the fact that the former conviction was known at the time sentence was imposed is immaterial. Graham v. State of West Virginia, 224 U. S. 616, 32 S. Ct. 583, 56 L. Ed. 917. The sentence was illegal and proceedings for resentence the inevitable sequence. * * * The Legislature has provided a mechanistic rule to take the place of the discretionary powers of the judge in passing sentence on second offenders."

It will be recalled that Taglerine's prior conviction was set forth in the indictment. Before *People v. Daiboch,* supra, came before the courts New York had

amended its legislation in such a way as to permit prior convictions to be alleged by an information. See Penal Laws, §§ 1942 and 1943. The latter section is worded the same as § 26-2804, O. C. L. A.

*People v. Daiboch* was apparently overlooked by the parties when they prepared their briefs. Unlike *Dodd v. Martin,* it represents the unanimous views of the Court of Appeals. Daiboch plead guilty December 7, 1932, in the Court of General Sessions to forgery and was sentenced to an indeterminate term of three to ten years. In 1924 he was convicted in New Jersey of a felony and that fact was known to the district attorney and to the sentencing judge when the indeterminate term was imposed. After Daiboch was received in the prison, the warden sent him back for resentencing as a second offender. Thereupon the district attorney filed an information and after a trial thereon Daiboch was found to be the man adjudged guilty in New Jersey in 1924 of a felony. The Court of General Sessions thereupon sentenced him as a second offender to a term with a remainder of nine years, eight months and seven days. The Appellate Division reversed that judgment and then the case was appealed to the Court of Appeals. The decision of that court, by quotation from the transcript of the proceedings conducted at the time of the sentencing in the Court of General Sessions, showed that Daiboch's New Jersey conviction was expressly mentioned before the indeterminate sentence was imposed. Its mention was due to the fact that Daiboch's counsel endeavored to secure in the Court of General Sessions a stipulation that Daiboch should be permitted to withdraw his plea of guilty in the event the New Jersey conviction made him a second offender. In affirming the judgment of the Court of

General Sessions, and in reversing the order of the Appellate Division, the Court of Appeals, said:

> "Before the first sentence was imposed the judge knew of the prior offense and had no right or power to impose an indeterminate sentence."

It held that the sentence fixed by the Baumes Laws was mandatory and imperative. It reaffirmed *Dodd v. Martin*.

*Commonwealth ex rel. Foster v. Ashe*, 146 Pa. Super. 482, 23 Atl. (2d) 245, made many appearances before the courts. See 336 Pa. 238, 8 Atl. (2d) 542; 142 Pa. Super. 357, 16 Atl. (2d) 433; and 124 Pa. Super. 533, 189 Atl. 804. A provision of the Pennsylvania Habitual Criminal Act (§ 4 of the Act of April 29, 1929, P. L. 854, 19 P. S. § 924) said:

> "If at any time within two years, either after conviction or sentence, it shall appear that a person convicted of any of the crimes set forth in section one of this Act has previously been convicted of any such crimes within three or more times, it shall be the duty of the district attorney \* \* \* to file an information accusing the said person of such previous convictions \* \* \*."

Thereafter substantially the same proceedings took place as under § 26-2804, O. C. L. A. The relator, Foster, was sentenced in Erie County May 19, 1930, for an indeterminate term of three to six years. April 29, 1932, an information was filed relating a series of crimes which it attributed to Foster. It accused him of being a fourth offender. October 11, 1932, a hearing was had on the information, resulting in the entry of an order which revoked the former sentence and sentenced Foster to imprisonment for life, in accordance with the Pennsylvania Habitual Criminal Act. The decision, reported in 146 Pa. Super. 482, 23 Atl. (2d)

245, was based upon a petition for a writ of habeas corpus and attacked the order of October 11, 1932. Seemingly, when the relator was before the court for sentencing May 19, 1930, the district attorney was aware of Foster's previous convictions, and one of the judges of Erie County had information upon the same subject. That judge, however, did not impose the sentence. In rejecting the petition for a writ of habeas corpus, the court (in 146 Pa. Super. 482, 23 Atl. 245) said:

"The knowledge of a trial judge that the defendant is a fourth offender such as will justify his imposing a sentence of life imprisonment, is not that obtained from a statement of the district attorney that he has a criminal record of three or more convictions outside the Commonwealth. It is not every conviction of crime that constitutes a conviction within the provisions of the Act of 1929. * * * Furthermore the Act of 1929 does not provide that the district attorney must present the information to the judge who presided at the trial of the convicted defendant. * * * The Act of 1929 does not provide or require that in order to bring an information under section 4, the knowledge of the defendant's prior convictions must have come to the district attorney after the defendant's conviction or sentence. It merely places a limit of two years after such conviction or sentence within which such information can be filed. The district attorney may have notice of a defendant's criminal record but not be prepared to prove it on a jury trial. He must be satisfied of the identity of the defendant with the person convicted in other jurisdictions; of the character of the offenses of which he was convicted and that they fall within the crimes mentioned in section 1, and he must be prepared to satisfy the jury beyond reasonable doubt of these facts by competent evidence in case the defendant denies the previous convictions as applicable to him, before

he is called upon to act by way of filing an information. Hence, the fact that district attorney Herbst may have had knowledge of this relator's criminal record but did not file an information against him did not prevent district attorney Graham from so doing within the two-year period fixed by the Act. Comm. ex rel. Foster v. Ashe, 336 Pa. 238, 239, 8 Atl. (2d) 542.''

*Smalley v. People* was based upon Colorado legislation substantially similar to our Habitual Criminal Act. We shall presently show, however, that a rule of procedure has developed in Colorado under their act which is foreign to our practice. Smalley was sentenced September 20, 1933, to a term of four to twenty years in prison upon his plea of guilty to robbery. When the sentence was pronounced both the district attorney and the judge knew that Smalley was convicted on March 5, 1929 on a previous charge of robbery. After the sentence of September 20, 1933, and after Smalley's commitment thereon to prison, an information was filed which charged him with being an habitual offender. It was based upon the conviction of March 9, 1929. After a hearing Smalley was found to be the man convicted March 9, 1929, and on December 22, 1933, was sentenced to a term of ten to sixty years. He appealed and thereupon was written the decision now under review. It reversed the judgment of December 22, 1933, and in so doing held that the section of the Colorado Habitual Criminal Act, which is similar to § 26-2804, O. C. L. A., ''clearly applies only to second offenders whose first conviction was unknown to the district attorney at the time of the second.'' The decision went on:

''There is nothing in the act to indicate a legislative intent to permit the state to ignore a first known conviction, gamble on the sentence, and, if

disappointed or aggrieved at the trial judge's exercise of discretion, file a new charge and force additional punishment. To so construe it would result in transferring from the trial judge to the district attorney all statutory discretion as to the term of imprisonment where there had been a former conviction. If, before trial, the district attorney knows of such, and has any discretion in the matter, he must charge or waive. He cannot charge after conviction on facts fully known to him before."

Since the penalty is mandatory and imperative, it is difficult to understand how either the district attorney or the trial judge has authority to waive its imposition. We said that in Colorado a practice has developed concerning the imposition of the additional penalty which is not employed in this state. As authority for our statement, we turn to *People v. Wolff*, 111 Colo. 46, 137 P. (2d) 693, and quote from it as follows:

"If at the time of trial the state has no knowledge of former convictions the procedure is clearly outlined by section 554, supra. If the state has that knowledge and intends to take advantage of such conviction, it is in duty bound to make the charge and try the entire case as one. No possible reason can be conceived for a separation and none is indicated by statute. To proceed otherwise is clearly error, if prejudicial reversible. Smalley v. People, 96 Colo. 361, 43 P. 2d 385. * * *

"Since under the circumstances the charge of former conviction could only be tried at the same time and to the same jury as the principal charge, when verdict was returned on the latter alone the court had no jurisdiction to proceed on the former but should have imposed sentence."

The rule of practice stated in that decision is foreign to our practice in Oregon.

We come now to the Washington decisions. Recently the Supreme Court of that state, in *State v. King,* supra, said:

"Those decisions recognize and suggest as the proper procedure in this general type of case the following method: Where a defendant has been convicted of a crime, consequent upon which an habitual criminal proceeding is instituted against him, sentence upon the substantive offence upon which he has been convicted shall await the outcome of the habitual criminal proceeding, and if the latter be substantiated, then, and not until then, shall sentence be imposed upon the defendant for the commission of the substantive crime, with an increased penalty exacted because of the adjudication of defendant's habitual criminal status."

The same practice prevails in this state: *State v. Durham,* 177 Or. 574, 164 P. (2d) 448, 162 A. L. R. 422.

Washington has no statute similar to § 26-2804, O. C. L. A. Its legislation concerning habitual criminals is § 2286 Rem. Rev. Stats. To make matters clear, we explain that Washington has no statute which declares: "If at any time, either after sentence or conviction, it shall appear that a person convicted of a felony has previously been convicted * * * it shall be the duty of the district attorney * * * to file an information."

In *State v. Kelch* the order of events was the following: (1) A jury found the defendant guilty of grand larceny; (2) an information was filed which accused the defendant of being an habitual criminal; (3) the defendant plead not guilty to the charge made in the information; (4) he was tried upon the information, but by a judge other than the one who tried the charge made in the indictment; (5) the jury's verdict found the averments of the information to be true; (6) he

was sentenced as an habitual offender; and (7) he appealed. In affirming the judgment, the court said:

> "Nor was it erroneous for another judge of the Superior Court of that county to pass sentence upon the person found guilty of being an habitual criminal, for the reason that there is no discretion involved. The sentence to be imposed was mandatory."

*State ex rel. Edelstein v. Huneke* was based upon an application by Edelstein to the Washington Supreme Court for a writ of prohibition against one of the judges of the Superior Court of the State of Washington. The writ was denied. After Edelstein had been adjudged guilty of burglary, but before he was sentenced, the prosecuting attorney filed an information which accused him of being an habitual criminal. January 8, before anything had been done concerning the information, Edelstein was sentenced to a term of five to fifteen years upon the burglary charge, and appealed. Then he attacked the information by demurrer, motion to quash and plea in abatement. After all of those had been overruled or denied, he plead not guilty to the information. At that point he made the application which we have mentioned for a writ of prohibition. His purpose was to prevent the Superior Court from trying him upon the information. In denying the writ, the decision, referring to the trial court, said:

> "It could not know what sentence was mandatory under the statute until the charge of being an habitual criminal had been tried out."

That being so, it held that the sentence of five to fifteen years, which was pronounced before the charge

made in the information was tried, "was a nullity." The decision declared:

> "It was the evident intent of the legislature that the question of prior convictions should be determined before sentence was passed, so that the whole case could be brought to this court in one proceeding. * * * We hold, then, that where an habitual criminal charge has been filed prior to sentence upon an immediate conviction which forms the basis of habitual criminal charge, the court is without power then to proceed to have the habitual criminal charge disposed of and then enter sentence upon the whole record."

See to the same effect *Ex parte Towne*, 14 Wash. (2d) 633, 129 P. (2d) 230, and *State v. Delano*, 189 Wash. 230, 64 P. (2d) 511. In the Edelstein opinion the court also said:

> "To justify a determination that one is an habitual criminal there must not only be a certain number of prior convictions as specified in the statute, but there must be one conviction immediately prior thereto and upon which the defendant has not been sentenced. To hold otherwise would be to place it in the power of the prosecutor at any time after conviction and sentence, and even after the service of sentence, to file such a proceeding and in effect to require a defendant to be punished twice for the same offense."

*Ex parte Lombardi* was an application by Lombardi for a writ of habeas corpus in which he attacked as void a sentence of life imprisonment imposed upon him under the Washington Habitual Criminal Act. The facts were: June 8, 1924, a jury returned a verdict finding Lombardi guilty of grand larceny. Thereupon he was sentenced to a term of ten to fifteen years. June 14 the formal judgment of guilt and the sentence

imposed were signed by the judge before whom Lombardi had been tried. At the same time the commitment was issued. On the same day an information was filed which alleged that he had been thrice convicted of felonies before his conviction of June 8. October 14 he was tried upon the information and was found to be the person three times previously convicted. Thereupon the sentence of life imprisonment was pronounced. After Lombardi had fully served the indeterminate sentence, he petitioned for the writ of habeas corpus. In holding the judgment of life imprisonment void, the court presumed that the judgment sentencing Lombardi to a term of ten to fifteen years was pronounced before the information accusing him of being an habitual criminal was filed. It then reasoned:

> "The judgment, then, having been valid when rendered an information subsequently filed, charging the petitioner with being an habitual criminal, was a mere nullity, and his trial and conviction upon that information and his sentence pursuant to that conviction were void."

Since, normally, a court's jurisdiction is terminated when sentence has been pronounced and the term of court has closed or a commitment has issued, the Washington court, in the absence of legislation similar to § 26-2804, O. C. L. A., could not hold other than as indicated in the decisions just reviewed. For instance, in Lombardi's case, the increased penalty, which the Supreme Court held void, was not imposed until the Superior Court had terminated its jurisdiction over him by committing him to prison. The State had no act authorizing the infliction of an habitual criminal penalty after sentence and commitment.

Since Washington has no statute similar to § 26-2804, the court could not achieve the results reached

242

in New York, Pennsylvania, Massachusetts, North
Dakota and West Virginia. Since § 26-2804 obviously
is intended to continue the court's jurisdiction over one
convicted of a felony until the mandatory sentence has
been pronounced, we are not at liberty to follow the
Washington decisions which were unconcerned with
that kind of legislation.

To the New York decisions we could add several
more from that state which were rendered by the
Appellate Division, but since that court is inferior to
the Court of Appeals from which we quoted, we have
not cited them. The New York decisions are peculiarly
pertinent because our statute came from that state.

 It is our belief that the New York, Penn-
sylvania ( as affirmed by the United States Supreme
Court), Massachusetts, North Dakota and West Vir-
ginia decisions were correctly decided. We are con-
vinced that an information may be filed after sentence
upon the main charge has been made, not only in the
instances in which the district attorney was unaware
before sentence of the convict's felonious record, but
also in the instances in which he knew the facts. Sec-
tion 26-2804, O. C. L. A., entrusts the district attorney
with no discretion. It is his duty to file the information
described in that section whenever the accused has a
felonious record. The information may be filed either
before sentence or afterward. If the district attorney
has adequate information and possesses the necessary
proof, the information ought to be filed before sen-
tence. The reasons are obvious. In the present instance,
the district attorney presumably had the required infor-
mation, but it does not appear that he possessed the
necessary proof. Regardless of what may be the facts
concerning that detail, the district attorney's duty to

file the information was a mandatory one, and the demands of the Habitual Criminal Act continued until the duty was performed. When the information was filed, the court had no discretion; its duty was likewise imperative. Since the statutory penalty was imposed, no error was committed.

The judgment of the circuit court from which the appeal was taken is reversed.