Argued November 8, 1956, reversed and remanded
February 13, 1957

# STATE OF OREGON *v.* WATERHOUSE

307 P. 2d 327

*Oscar D. Howlett,* Deputy District Attorney, Portland, argued the cause for appellant. With him on the brief was William M. Langley, District Attorney, Portland.

*Theodore D. Lachman,* Portland, argued the cause and filed a brief for respondent.

LUSK, J.

This is an appeal by the state from an order sustaining defendant's demurrer to an indictment and dismissing the action.

---

Tooze, Acting Chief Justice, died December 21, 1956.

The prosecution is for the offense known as "interfering with the privacy of another" (ORS 167.165), and the charging part of the indictment reads:

"The said WALTER LEE WATERHOUSE on the 16th day of October A.D. 1955, in the County of Multnomah and State of Oregon, then and there being, did then and there unlawfully and wilfully enter the upstairs apartment of a dwelling house, located at 506 Northeast Alberta Street in the City of Portland within said county and state, without the consent or permission of Evelyn Mary White, the lessee of the said apartment, the said Walter Lee Waterhouse not then and there being an officer, and the said Walter Lee Waterhouse there did then and there look through the open door of the bedroom of the said apartment without the consent or permission of the said Evelyn Mary White with intent to violate the privacy of the said Evelyn Mary White, the said bedroom at the said time and place being occupied by the said Evelyn Mary White, the said Walter Lee Waterhouse before the commission of the offense charged herein, was in the Circuit Court of the State of Oregon for the County of Multnomah convicted of the crime of Rape, Oregon Compiled Laws Annot[at]ed, section 23-420, now designated Oregon Revised Statutes, section 163.210, by plea of Guilty on the 27th day of October, 1953, and a sentence of imprisonment for one (1) year in the Oregon State Penitentiary adjudged by the said court on the 3rd day of November, 1953, for the said crime, which sentence was executed by service of the term of imprisonment."

Defendant's demurrer is based on the following grounds: (1) That the indictment includes prejudicial matter which would preclude a fair trial and procedural due process, to wit, the allegation that the defendant had been previously convicted of the crime

of rape; (2) that the same allegation is immaterial and irrelevant; (3) that the facts stated do not constitute a crime; and (4) that the indictment charges more than one crime. Ground 3 will be considered later in this opinion.

The other specifications challenge the propriety of including allegations of prior offenses in an indictment where a statute provides more severe punishment for one who has previously been convicted of such prior offenses.

ORS 167.050 is such a statute. It reads:

"Violation of ORS *163.210,* 163.220, 163.270, 167.035, 167.040, 167.045, 167.145, *167.165* or 167.210, by any person who has previously been convicted of a violation of any one, or more than one, of those sections, is punishable, upon conviction, by imprisonment in the state penitentiary for an indeterminate term not exceeding the natural life of such person." (Italics added.)

The crime of interfering with the privacy of another is a violation of ORS 167.165. The crime of rape, the previous offense alleged in this indictment, is denounced by ORS 163.210. The penalty provided for violation of ORS 167.165, if prosecuted in the circuit court, is imprisonment in the county jail for not less than three months nor more than one year, or a fine of not less than $50 nor more than $1,000, or both; while the enhanced penalty for that offense under ORS 167.050, where the defendant has been previously convicted of rape or any of the other crimes referred to in that section, is imprisonment in the state penitentiary for an indeterminate term not exceeding the natural life of the person convicted.

■ The contention that the indictment charges more than one crime is settled adversely to the defendant

by our decisions and does not call for discussion. *Little v. Gladden,* 202 Or 16, 19, 273 P2d 443; *Castle v. Gladden,* 201 Or 353, 360, 270 P2d 675; *State v. Smith,* 128 Or 515, 524, 273 P2d 323.

■ The question most debated, as to the propriety of including allegations of prior convictions in the indictment, where such convictions are material to the penalty, has also been decided by this court. In two cases entitled *State v. Newlin,* 92 Or 589, 596, 182 P 133, and 92 Or 597, 599, 182 P 135, we held, in opinions by Chief Justice McBride, that such an allegation is not only proper but necessary for the validity of a judgment imposing the enhanced penalty. The charge in each of these cases was the unlawful sale of intoxicating liquor, apparently in violation of Oregon Laws 1915, ch 141. Section 36 of the act provided severer penalties for second and third convictions, but no procedure was prescribed. The indictments failed to allege that the defendant had been previously convicted of violation of the prohibition law, but the circuit court, nevertheless, imposed the increased penalty. On appeal to this court the judgments were set aside and the cases remanded for resentence solely because of the court's error in sentencing the defendant as a second offender. The court said:

"It was also suggested upon the argument that it was error to adjudge the defendant guilty of a second offense and sentence him accordingly, in the absence of an allegation in the indictment charging the prior conviction, and this seems to be the general holding of the courts: 22 Cyc. 356, and cases there cited."

The mere statement of the case sufficiently shows that the defendant's contention that this holding was dictum is completely lacking in foundation.

■ The Newlin decisions accord with the great weight of authority. In *Massey v. United States,* 281 F 293, 297 (8th Cir), the court, referring to statutes providing for greater punishment of second or subsequent offenses by the same person, cited decisions of courts of 27 jurisdictions, including Oregon, in support of the following statement:

> "* * * It is the established rule, under such statutes, unless the statute designates a different mode of procedure, that, if the prosecutor desires to invoke the severer punishment provided as to second or subsequent offenders, the indictment or information must allege the fact of prior conviction, and the allegation of such conviction must be proved in the trial to the jury."

The reason for the rule is, as the court there said, that "The statement of a prior conviction is regarded as a part of the description and character of the offense intended to be punished, and as an essential ingredient of such aggravated offense." See, also, 1 Bishop on Criminal Law (9th ed) § 961 (quoted in *State v. Smith,* supra, 128 Or at p 522); III Wharton's Criminal Procedure 2309, § 1877; 1 Wharton's Criminal Evidence (12th ed) 498, § 233 (1955); 42 CJS 1057-1059, Indictments and Informations § 145; and the following annotations: 58 ALR 64; 82 ALR 366; 116 ALR 229; 132 ALR 107; 139 ALR 689.

"I regard it," said Judge Gray in *People v. Sickles,* 156 NY 541, 547, 51 NE 288, "as a necessary and logical conclusion, where an increased punishment is prescribed by the statute upon conviction for a second offense, that the prior conviction enters as an ingredient into the criminality of the prisoner. Not that the fact of the prior conviction tends, in any wise, to prove the commission of the second offense; but that

it aggravates the guilt of the prisoner and, as a hardened, or unreformed, criminal, subjects him to an increase punishment for the repeated crime."

Our statute provides that the indictment shall contain "A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." (ORS 132.520 (2)).

██ If the prior offense is an ingredient of the crime then it must be alleged in the indictment and the burden is upon the prosecutor to prove it beyond a reasonable doubt. ORS 136.520.

This was the common-law procedure followed in England (*Rex v. Jones,* 6 Car & P 391 [1834]), until it was changed by acts of Parliament, which provided, in substance, that so much of the indictment as charged a prior offense should be withheld from the jury until after a verdict of guilty had been rendered on the current charge, whereupon the question of a previous conviction should be determined by the jury if the defendant should deny it. 6 and 7 Wm IV, ch 111; 24 and 25 Vict Ch 99, § 27. See *Graham v. West Virginia,* 224 US 616, 625-626, 56 L ed 917, 32 S Ct 583. In sustaining the constitutionality of the habitual criminal law of New York, which was subsequently adopted by the Oregon legislature (*State v. Smith,* supra; *Macomber v. State,* 181 Or 208, 217, 180 P2d 793), the court, in *People v. Sickles,* supra at p 546, said with reference to the English procedure:

"* * * The very fact, that in England it was necessary to enact a statute to remedy what was, probably, deemed a defect in criminal procedure at the common law, tends to show that, until

legislation has changed the rule, it is essential that the prior conviction be proved by the People as a part of the case against the prisoner.''

See, also, *People v. Gowasky,* 244 NY 451, 456, 155 NE 737, 58 ALR 9.

By court decision a procedure similar to that now employed in England has been adopted in Connecticut. *State v. Ferrone,* 96 Conn 160, 172-176, 113 A 452. But it should be observed that both in England and Connecticut prior offenses must be alleged in the indictment. It was so expressly held in *State v. Delmonto,* 110 Conn 298, 147 A 825. It should be remembered that we are dealing now only with the question whether the indictment is vulnerable to demurrer.

There is, of course, no common-law procedure as such in this state. *Williams v. Pacific Surety Co.,* 66 Or 151, 155, 127 P 145, 131 P 1021, 132 P 959, 133 P 1186. When we speak of the common-law procedure in this opinion we mean the procedure in effect in England before it was changed by statute and which remains the same in Oregon by very force of the statutes of this state prescribing the contents of an indictment and the duty of the state to prove the material allegations thereof beyond a reasonable doubt.

◼ The contention that the practice of proving a former conviction on the trial violates the defendant's constitutional right to procedural due process does not have the support of any authority that we have seen. It rests upon the proposition that it deprives the defendant of the presumption of innocence and relieves the prosecution of the burden of proving the defendant's guilt. The question was directly presented in *People v. Sickles,* supra, and resolved adversely to

432

the defendant's position. Judge Gray, writing the opinion for the court, said:

"*  *  *  When it is said that the presumption of the defendant's innocence was destroyed by the introduction of proof of his former conviction, the proposition is based upon mere assumption and it is the error in that assumption which affects the appellant's argument. The statute has not abrogated the rule as to the presumption of innocence. It is expressly preserved to the defendant by section 389 of the Code of Criminal Procedure, and the defendant had the benefit of it upon his trial; in that the court distinctly instructed the jury to that effect. It will not be presumed that the jurors failed to obey the instruction; or that they did not accord to the accused the benefit of every reasonable doubt upon the evidence. There can be no legal presumption that the presumption of the defendant's innocence will be prejudiced. The legislature can do as the English Parliament has done; by changing the rule of procedure. But that rests in the legislative discretion and, until it is exercised in that direction, the established procedure must be followed and the proof must be such as to meet the charge and bring the case within the statute." 156 NY at p 549.

In *Graham v. West Virginia,* supra, the court held, in an opinion by Mr. Justice Hughes, later Chief Justice Hughes, that there is no deprivation of due process of law because the question as to a former conviction is passed upon separately. In the course of the opinion the court said:

"*  *  *  Although the State may properly provide for the allegation of the former conviction in the indictment, for a finding by the jury on this point in connection with its verdict as to guilt and thereupon for the imposition of the full sentence prescribed, there is no constitutional mandate which

requires the State to adopt this course even where the former conviction is known." 224 US at p 629.

To the same effect see *People v. Coleman,* 145 Cal 609, 79 P 283; 42 CJS 1058, Indictments and Informations § 145. In *State v. Stump,* 16 Wash2d 140, 149, 132 P2d 727, a case involving prior convictions under a liquor prohibition law, the court gave its approval to the practice of charging prior convictions in the information and proving them in connection with the main charge, although the statute failed to prescribe any procedure in that regard. We mention this case particularly because our attention has been called to the earlier Washington decision of *State v. Kirkpatrick,* 181 Wash 313, 43 P2d 44, in which the court held that, under the Washington habitual criminal law, which likewise does not prescribe the procedure for alleging and proving prior offenses, it was error to include an allegation of a prior conviction in the indictment. The court said "that we refuse to be bound by an archaic common-law practice which impinges upon the fair and impartial trial guaranteed by the Constitution to every one charged with a criminal offense." If this was intended to be a holding that the common-law practice is unconstitutional, then it has been overruled by *State v. Stump,* supra, unless one should accept the view, which no one has suggested, that the constitutional rights of persons accused of violating a prohibition law are something less than those of persons charged with other and, perhaps, more serious offenses.

In this connection it may be observed that the habitual criminal law of Washington originally provided for a separate proceeding for determining whether the defendant had been previously convicted. Laws of Washington 1903, p 125. In 1909 the law was

changed by omitting all reference to such procedure. In *State ex rel Edelstein v. Huneke,* 140 Wash 385, 249 P 784, 250 P 469, it was contended by the defendant that the procedure followed, namely, the filing of an information and the proof of prior convictions after he had been found guilty on the principal charge, was violative of the Due Process Clause of the Fourteenth Amendment. The court, reviewing the authorities, concluded that they supported unanimously "the principle firmly ingrained in our criminal law that one may not be sentenced for a second offense unless the indictment aver and the evidence prove that it is a second offense." But it was said that ever since the change in the law in 1909, as before, the practice had been for prosecutors to proceed in the manner followed in the case before the court, and, while there was much force in the argument that failure to provide for procedure in the Law of 1909 "should be construed to be an intention of the Legislature to abandon the defendant to the harsh treatment followed under the common law," still the court could not "agree that the refusal of a prosecutor to apply the harsher rule vitiates the proceedings," and that no defendant had any right to demand that a certain procedure be followed unless the failure to do so might possibly work to his detriment. The claim of a violation of constitutional rights was, therefore, rejected.

Viewed against the background of the legislative and judicial history in Oregon relating to this subject, it seems reasonable to conclude that, in omitting to prescribe a different procedure when it enacted ORS 167.050, the legislature intended that the common-law procedure should govern. The statute was originally passed in 1953. The Newlin cases were decided in 1919. In 1921 the legislature passed an Habitual Criminal

Act, which provided that "former judgments of conviction shall be referred to in the indictments," Oregon Laws 1921, ch 70. This act was repealed by Oregon Laws 1927, ch 334, and a new Habitual Criminal Act was passed, taken, as previously stated, from New York, and containing procedural provisions under which an information alleging prior convictions must be filed and a hearing had thereon after a verdict of guilty has been found upon the charge in the indictment. In *State v. Smith,* supra, which was a prosecution under the 1927 Act, the defendant complained that the indictment should have alleged his prior convictions, but the court held that, in view of the repeal of the 1921 Act and the adoption of the 1927 Act, such an allegation was unnecessary. The court referred to *People v. Gowasky,* supra, a decision rendered shortly prior to the adoption of the New York Habitual Criminal Act by the Oregon legislature, and which held that it was not necessary to allege previous convictions since the statute provided a different procedure. The court noted that the New York court said that this "seems eminently fair to any prisoner," but that "the old practice, though no longer necessary, was still permissible." (128 Or at pp 522-523.)

The 1927 Act became OCLA, Title 28, ch 6. It was repealed by Oregon Laws 1947, ch 585, which is a re-enactment of the habitual criminal law, containing in § 4 thereof some changes in the procedural provisions. Further changes were made by Oregon Laws 1951, ch 383, § 4, and again by Oregon Laws 1955, ch 663, § 5, now ORS 168.040, the last, no doubt, induced by our decision holding unconstitutional a portion of § 4 of the 1951 Act. See *State v. Cory,* 204 Or 235, 282 P2d 1054, decided April 20, 1955. Throughout its history, how-

ever, since 1927 the habitual criminal law has provided a post trial procedure for proving prior offenses.

██ Knowledge on the part of the legislature of these earlier enactments is presumed (*Watts v. Gerking,* 111 Or 641, 658, 22 P 318, 228 P 135, 34 ALR 1489; 50 Am Jur 354, Statutes § 354), and it is likewise presumed that the statute was enacted "in the light of such existing judicial decisions as have a direct bearing upon it." 50 Am Jur 312, Statutes § 321; *State v. Raper,* 174 Or 252, 254, 149 P 2d 165. The omission from the statute, therefore, of any procedural provisions whatever must be regarded as of controlling significance upon the question of the legislative intention. And the Habitual Criminal Act itself cannot be applied here because it relates only to felonies, while ORS 167.050 includes misdemeanors, to wit, interfering with the privacy of another.

It is contended that the common-law procedure applies only in cases of similar offenses. With the exception of two jurisdictions the contention is not supported by the authorities. Among the numerous decisions to the contrary are the following: *People v. Rosen,* 208 NY 169, 172, 101 NE 855; *Blackburn v. State,* 50 Oh St 428, 436, 36 NE 18; *Larney v. City of Cleveland,* 34 Oh St 599, 601; *Commonwealth v. Payne,* 242 Pa 394, 399, 89 A 559; *State v. Reilly,* 94 Conn 698, 110 A 550; *State v. Findling,* 123 Minn 413, 416, 144 NW 142; *State v. Manecke,* 139 Mo 545, 548, 41 SW 223; *Commonwealth v. Walker,* 163 Mass 226, 39 NE 1014; *Wright v. State,* 16 Okla Cr 458, 460, 184 P 158; *Alsheimer v. State,* 165 Wis 646, 647, 163 NW 255. The reason for the rule, as quoted above from *Massey v. United States, viz.,* that "the statement of a prior conviction is regarded as a part of the description and character of the offense intended to be punished, and

as an essential ingredient of such aggravated offense,''
applies equally to disparate as to similar offenses. The
Kansas court, however, has recognized the asserted
distinction as between the habitual criminal law and
the prohibition law of that state: *Levell v. Simpson,*
142 Kan 892, 52 P2d 372; *State v. Jones,* 147 Kan 8,
75 P2d 230; and the Washington court cited these cases
with approval in *State v. Stump,* supra.

The principal objection to the common-law proced-
ure is that the allegation and proof of prior offenses
is likely to create prejudice against the defendant in
the eyes of the jury. We recognize the force of the
objection, but are unable to see that it is any less
valid in the case of similar crimes than in the case of
crimes of a different character. But, even on the basis
of the reasoning of the Kansas court, the indictment
in the case at bar, it would seem, should be sustained.
In *Levell v. Simpson,* supra, the court said that the
persistent violation of the prohibitory law is ''a sepa-
rate and distinct crime,'' that a first offense is a mis-
demeanor punishable by a moderate fine and jail sen-
tence, while a subsequent infraction ''is a distinct
felony,'' and, therefore, ''all the formalities of a
felonious charge should be pleaded in the informa-
tion.'' All the offenses referred to in ORS 167.050 are
of the same kind. The title of the original act, Oregon
Laws 1953, ch 641 (of which ORS 167.050 is amenda-
tory), is ''AN ACT Relating to criminal offenses moti-
vated by or involving sexual stimulation,'' etc. The
offense of interfering with the privacy of another is,
as stated, a misdemeanor. By ORS 167.050 it is made
a felony punishable by life imprisonment if the de-
fendant has been previously convicted of rape or any
of the other crimes enumerated. The same necessity
exists here for pleading ''all the formalities of a

felonious charge'' as under the Kansas prohibitory law.

It is contended that ORS 137.080–137.110, both inclusive, and 137.990 prescribe the procedure for determining the penalty in this class of cases. These sections provide the manner in which, after a plea or verdict of guilty, circumstances in aggravation or mitigation of the punishment may be brought to the attention of the court. They are applicable only in a case ''where a discretion is conferred upon the court as to the extent of the punishment to be inflicted.'' ORS 137.080. No such discretion is conferred by ORS 167.050. The statutes invoked by the defendant were not enacted for the purpose of determining the penalty which the law prescribes for the particular offense, but the penalty to be imposed within the limits of the governing statute in view of the existing circumstances. To be specific, the penalty for the crime for which the defendant was indicted, if it be a first offense, is at the most imprisonment in the county jail for one year and a fine of $1,000. Should a person be indicted for that offense and convicted, the court might have a hearing and determine whether the maximum penalty should be imposed or something less than the maximum. The court could consider his previous conviction of rape, if he had been so convicted, as a circumstance affecting its exercise of discretion. But the court could not sentence him as a second offender because he had never been charged as such in any manner known to the law. The contention only serves to illustrate the need of applying the common-law procedure in the absence of legislation prescribing a different procedure.

■ As stated, one of the grounds of the demurrer is that the indictment does not allege sufficient facts to constitute the crime charged. The point made is that

the indictment fails to allege, in the words of the statute, that the apartment entered by the defendant "was not his own." It does allege that the defendant entered the apartment "without the consent of Evelyn Mary White, the lessee of said apartment." We think that this allegation sufficiently negatives the notion that it was the apartment of the defendant.

■ We conclude that the indictment is sufficient, that it is drawn in the only manner permissible under the law of this state if the defendant is to be prosecuted as for a second offense, and that the procedure to be followed violates no constitutional rights of the defendant. The legislature can provide a procedure fairer to the accused, as in the case of the Habitual Criminal Act, but it has not seen fit to do so, and it is not the province of this court to interfere with the policy established by the legislature when acting within the limits of its constitutional powers.

By the terms of the statute here dealt with a person twice convicted of violations of what is known as a "peeping Tom" statute—a misdemeanor—, or a person twice convicted of violations of ORS 167.145, relating to indecent exposure,—likewise a misdemeanor —, is liable to be punished by life imprisonment. Consideration of the extreme severity of the penalty in its relation to the gravity of such offenses may suggest to the legislative assembly the advisability of ameliorating amendments. We make this observation with full realization of the difficulty society experiences in attempting to cope with the evil aimed at by the statute.

The court erred in sustaining the demurrer. The judgment is reversed and the cause remanded for further proceedings in conformity to this opinion.

PERRY, C.J., dissenting.

I am unable to agree with the majority opinion and, therefore, feel that I should set forth my separate views.

It appears that the majority opinion relies upon *State v. Newlin,* 92 Or 589, 182 P 133, which holds [p. 596] that an enhanced penalty cannot be imposed by the trial judge "in the absence of an allegation in the indictment charging the prior conviction." This holding is based upon a rule of law, according to the majority opinion, that "if the prosecutor desires to invoke the severer punishment provided as to second or subsequent offenders, the indictment or information must allege the fact of prior conviction." *Massey v. United States,* 281 F 293, 297. The reason being that "the statement of a prior conviction is regarded as a part of the description and character of the offense intended to be punished and as an essential ingredient of such aggravated offense."

The majority opinion then points out that this rule of procedure was adopted into this country from the common law of England and, because such procedure "was, probably, deemed a defect in criminal procedure," it later was changed by statute in England.

It is then argued that, because in the Habitual Criminal Act, ORS 168.011 to 168.040, there is provided a procedure for invoking the enhanced penalty, its absence from ORS 167.050 shows the legislative intent that the procedure known to the common law should be observed. It is upon this point that I cannot agree with the majority.

As a foundation upon which to build the argument that we must use the common-law procedure, the majority state in effect that the prior offense is "an

ingredient'' of the second offense. *People v. Sickles,* 156 NY 541, 51 NE 288.

Note should be taken that, in the Sickles case, in order to reach that conclusion it was necessary to overrule, in effect, the logical language of Judge Finch in *People v. Raymond,* 96 NY 38, 39, where the court stated:

"The first offense was not an element of or included in the second, and so subjected to added punishment, but is simply a fact in the past history of the criminal, which the law takes into consideration when prescribing punishment for the second offense. That only is punished."

And it should be further noted that the New York court recognized the entire problem as solely a procedural matter, for in *People v. Sickles,* supra, p. 289, it stated:

"The statute, in question, is not dealing with, nor regulating, criminal procedure, but is declaring the enhanced penalty which a subsequent offender against the laws of the state will incur upon conviction. When the People present a case under its provisions, *the procedure to establish it is governed by the provisions of the Code of Criminal Procedure."* (Italics ours.)

While the majority are willing to add the prior offenses to the indictment as a part of the subsequent offense charged to make the common-law procedure applicable, they seem to be unwilling to follow the clear dictates of the legislature upon this procedural point. Logically, ORS 1.160 must be interpreted with ORS 167.050. ORS 167.050 is only an enhanced penalty statute with no procedure set out therein for its enforcement. ORS 1.160 provides procedure for that very situation.

As will be later pointed out, the Newlin case, supra, relied upon by the majority as *stare decisis* of the issue presented, is neither authority for nor against the position taken. That case, as pointed out in the majority opinion, was decided before the legislature had enacted any similar statute governing procedure where an act provided for an enhanced penalty for prior offenders.

The law of England as it existed at the time of the American Revolution was adopted as a part of the organic law of this state (*United States F. & G. Co. v. Bramwell,* 108 Or 261, 217 P 332, 32 ALR 829) only insofar as the law was cognizance with the public policy, the constitution, and statutory enactments of the state. *Re Water Rights of Hood River,* 114 Or 112, 227 P 1065; *Pacific Power & Light Co. v. Bayer et al.,* 273 US 647, 47 SC 245, 71 L Ed 821; *Peery v. Fletcher,* 93 Or 43, 182 P 143.

ORS 1.160 provides:

> "When jurisdiction is, by the constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; *and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes.*" (Italics ours)

We have held this act applicable to our code of criminal procedure. *State v. Ridder,* 185 Or 134, 202 P2d 482; *State v. Chase,* 106 Or 263, 211 P 920.

ORS 1.160, properly interpreted, it seems to me, clearly states that when a judge is granted jurisdiction to sentence under an enhanced penalty statute, and no procedure is provided in that statute, a mode of procedure must be adopted by the courts most conformable

with the spirit of any procedural statutes then existing by prior enactment covering a similar situation. The Habitual Criminal Act provides procedure for just such a situation as is now before us, and it is clear to me that the legislature intended that we use the mode of procedure provided under that act. Since by statute the courts are directed to use a mode of procedure most conformable to the spirit of our own procedural statutes, if, as here, we have a procedural statute applicable to a situation similar in nature, the courts are required to follow the laws of this state and cannot proceed as at the common law.

The opinion of the majority leaves with the prosecuting officer in each jurisdiction the option of invoking the enhanced penalty statute or not, as he shall see fit. It also permits no method by which a vicious offender may be made subject to the enhanced penalty statute unless his prior crimes are known and alleged prior to his conviction upon a second offense.

Therefore, in my mind, there is no room for argument that the courts of this state must rely upon outmoded procedures that are admittedly defective, contrary to public policy, and shock our American sense of justice.

I would affirm the trial court, and, therefore, dissent.

Mr. Justice WARNER concurs in this dissent.

WARNER, J., dissenting.

The majority opinion clings to a common-law rule which, in my opinion, is prejudicial to the substantial rights of the defendant in a trial upon the merits of the principal crime charged. To say no constitutional rights are invaded begs the question and ignores the impact upon a jury who at the very outset of the case

are informed that the defendant has been convicted of misdemeanors or felonies of a sexual implication. To ignore the reaction conjured in the minds of the average juror by thus cataloging such crimes at that juncture is to deny the patterns of human experience. The following statement from *State v. Ferrone,* 96 Conn 160, 113 A 452, 457, eloquently expresses what one can normally expect in the jury box under such circumstances:

"\* \* \* It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if, during that trial, allegations that he has twice before been convicted of State prison crimes have been read to the jury, and evidence of his former convictions has been placed before them. It is beyond question that knowledge of such facts must necessarily prejudice the minds of his triers against the accused, and cause him more serious injury than that which he would suffer from any improper remarks of the State's Attorney. \* \* \*."

There is only one question of importance for us to decide in this matter. Shall we reject the common-law rule followed in the two cases of *State v. Newlin* (92 Or 589, 596, 182 P 133 and 92 Or 597, 599, 182 P 135) and which continues the prejudicial atmosphere deplored in *State v. Ferrone,* supra, or shall we embrace the opportunity presented to substitute a more enlightened procedure patterned after the Habitual Criminal Act as since adopted by the legislature?

In *Carroll v. Local No. 269 International Brotherhood of Electrical Workers,* 133 NJ Eq 144, 31 A2d 223, it is said, at p 225:

"It is the peculiar strength of the common law that no decision is 'stare decisis' when it has lost

its usefulness in social evolution, but it is distinguished, and if times have sufficiently changed, overruled.''

I submit, in terms of Carroll, supra, that the common-law rule followed in the two Newlin cases, supra, has long since ''lost its usefulness in social evolution'' since it was last employed in this state nearly 40 years ago. I also note that England, the birthplace of the rule followed in the two Newlin cases, repudiated it in 1836 by 6 and 7 Wm IV, ch 111, more than 120 years ago. Certainly the social evolution in the changing times of the intervening years has worked a more humane and considered regard for the defendants at bar, as witness the provisions of the Habitual Criminal Act, which provides for enhanced penalties, yet protects the accused from the prejudices engendered by the outmoded procedure of the rule followed in the two Newlin cases.

Why should we hesitate when we not only have a pattern to guide us in substituting a precedure in lieu of that followed in the instant indictment, but also have, as pointed out in the dissenting opinion of Chief Justice PERRY, statutory authority, if not an express duty, to provide a procedure implementing ORS 167.050, arising because of the legislature's failure to do so. I refer to the powers conferred on the court by ORS 1.160.

If we fail to embrace this opportunity to avoid the prejudicial effect of the common-law rule followed in the two Newlin cases, we place ourselves in a rather anomalous position so far as devotion to principle is concerned.

I refer to the rules which so rigorously exclude on the civil side of the court all evidence in negligence

cases of previous accident, and which on the criminal side, bars evidence of other crimes in the trial of a criminal case: the reason being, in both types of cases, because of the prejudicial effect of such evidence on the minds of jurors. For application of this rule in civil cases, see *Warner v. Maus,* 209 Or 529, 304 P2d 423; *Rayburn v. Day,* 126 Or 135, 143, 268 P 1002. For illustrations of the rule applied as in criminal cases, see *State v. Houghton,* 43 Or 125, 71 P 982; *State v. McClard,* 81 Or 510, 160 P 130; *State v. Casey,* 108 Or 386, 213 P 771, 217 P 632.

I do not point to these cases as authority for declaring the instant indictment invalid. I refer to them only by way of demonstrating our consciousness of the prejudicial character of evidence of previous involvements of the defendant, civil or criminal in character, and contend that if we sustain the indictment in this matter with its record of many previous crimes, and its consequent prejudicial effect, we are blowing hot and cold at the same time on our position of proper and previous jealous devotion to rules of law which eliminate from trials, criminal or civil, reference to previous crimes or previous acts of negligence, as the case may be.

The inconsistency of the majority position in this respect assumes a more striking dimension when the court refuses to utilize the power which it has (ORS 1.160), although armed with the means and authority for implementing the legislative intent by adopting what I venture to call a more modern and enlightened procedure and in a pattern long ago receiving legislative approval.

"The very essence of the common law is its flexibility and adaptability.  *  *  *  It is one of the established principles of the common law which has been

carried along with its growth, that precedents must yield to the reason of different or modified conditions." *Re Water Rights of Hood River,* 114 Or 112, 180, 227 P 1065. "While the doctrine of stare decisis attaches great weight to precedents, it does not demand that courts adhere to them if satisfied they are manifestly wrong." *Noonan v. City of Portland,* 161 Or 213, 240, 88 P2d 808. In *State v. Mellenberger* (a criminal case), 163 Or 233, 95 P2d 709, 128 ALR 1506, at page 259, and again in *Safeway Stores v. State Board of Agriculture,* 198 Or 43, 255 P2d 564, at page 81, we quoted with approval from a legal essay by Daniel H. Chamberlain on the subject of "Stare Decisis." I now quote only a part therefrom:

"* * * the degree of authority belonging to such a precedent depends, of necessity, on its agreement with the spirit of the times or the judgment of subsequent tribunals upon its correctness as a statement of the existing or actual law, and the compulsion or exigency of the doctrine is, in the last analysis, moral and intellectual, rather than arbitrary or inflexible."

Also see the dissenting opinion in *Landgraver v. Emanuel Lutheran Hospital,* 203 Or 489, 526, 280 P2d 301, and cases there cited.

The late Justice Tooze was originally assigned the task of writing an opinion in this matter and at the same time in its companion case, *State v. Waterhouse.* The legal problems presented by these two cases are identical. Both defendants were charged with sexual crimes or acts relating thereto and because of previous convictions from crimes of the same general character, were subject to enhanced penalties under ORS 167.050, if found guilty under the indictments which are the subject of appeal in the Johnson

and Waterhouse cases. The only distinguishing difference between the two indictments is: the defendant Johnson was indicted for a felony (ORS 167.045) and the defendant Waterhouse for the commission of a misdemeanor (ORS 167.165). Justice Tooze elected to make the Johnson case the basis for his opinion, whereas the Waterhouse case is the foundation for the majority opinion.

Justice Tooze died a few days after his opinion was distributed and, therefore, was not present to defend it when it received its first consideration and failed to command the necessary support to entitle it to become the decision of the court.

As is so self-evident from Justice Tooze's opinion, he gave to the questions raised his usual close attention and excellent legal appraisal. During the period he was so engaged, he talked to me frequently about it and I know that had it failed, as it did, to become the majority opinion he intended to dissent and offer it in support and explanation for his action. I advised him then that I would join in his dissent. I have discovered nothing since to dissuade me from that earlier made judgment.

I frankly confess my own conclusions are derived to a very large extent from Justice Tooze's well-considered and scholarly analysis of the problem before us. For that reason and as a tribute to the memory of his judicial excellence, I feel warranted in including his offering on this subject as a part of this dissent.

Before doing so, I have, in an effort to condense, deleted the opening or introductory paragraph, the paragraphs which immediately follow the first paragraph and which set up the charging clauses of the indictment and the terms of the demurrer in toto. A few other deletions are made in the body of the opin-

ion and as there shown do not impair the force of Justice Tooze's argument.

The following is the opinion of Justice Tooze to which I refer:

\*    \*    \*    \*    \*

"ORS 132.520 provides as follows:

"The indictment, which is the first pleading on the part of the state, shall contain:

"(1) The title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties.

"(2) A statement of the acts constituting the offense in ordinary and concise language, without repitition [sic], and in such manner as to enable a person of common understanding to know what is intended."

ORS 132.590 provides:

"No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form *which does not tend to the prejudice of the substantial rights of the defendant upon the merits."* (Italics ours.)

Under the code of criminal procedure in this state no provision is made for a motion to strike immaterial parts of an indictment. With one exception not material to this case (ORS 135.510), defects in an indictment can be challenged only by demurrer. ORS 135.630 provides:

"The defendant may demur to the indictment when it appears upon the face thereof that:

"(1) The grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

"(2) It does not substantially conform to the

requirements of ORS 132.510 to 132.570, 132.590, 132.610 to 132.690, 132.710 and 132.720;

"(3) More than one crime is charged in the indictment;

"(4) The facts stated do not constitute a crime; or

"(5) The indictment contains any matter which, if true, would constitute a legal justification or excuse of the crime charged or other legal bar to the action."

The demurrer to the indictment in this case was sustained upon the ground that it did not conform to the requirements of ORS 132.520, supra, and that the allegations therein of prior offenses on the part of the defendant were prejudicial to the substantial rights of the defendant upon the merits of the principal crime charged.

ORS 167.045 provides: [deleted]

The state contends that the foregoing allegations respecting prior offenses on the part of the defendant were included in the indictment as necessary averments in order that the court could sentence the defendant under the enhanced penalty statute applicable thereto. That contention presents the principal issue for determination on this appeal. ORS 167.050 provides as follows: [deleted because it is quoted in its entirety in the majority opinion]

Before discussing the principal issue raised on this appeal, we will dispose of the question of whether that issue was properly raised by the demurrer filed on behalf of the defendant. The law is well settled that if an indictment contains surplus words or allegations, and such surplusage may be deleted and sufficient allegations remain to sustain a conviction, then

the demurrer to the indictment is properly overruled. *State v. Dormitzer*, 123 Or 165, 169, 261 P 426; *State v. Emmons*, 55 Or 352, 358, 104 P 882, 106 P 451; *State v. Humphreys*, 43 Or 44, 48, 70 P 824. However, in those cases there was no discussion as to whether the surplusage was in truth prejudicial, and in none of them could the surplusage be considered prejudicial.

It is our opinion that when the surplusage is prejudicial, the indictment ceases to be a statement of the principal offense in ordinary and concise language, and is subject to demurrer. Reading ORS 132.520, supra, ORS 135.630, supra, and ORS 132.590, supra, together, that would seem to be the plain intent of the law. It is obvious that the pleading of the prior convictions in the indictment would prejudice the defendant and might well lead to a conviction upon general principles rather than for the specific offense charged. If the arguments presented to us by the defendant upon the principal issue are sound, then the allegations of prior convictions should not have been included in the indictment, and such allegations would be and are completely irrelevant to the principal offense charged.

The precise question now under discussion was considered by the Supreme Court of Indiana in *Torphy v. State*, 187 Ind 73, 75, 118 NE 355. In that case the indictment contained an allegation of a prior conviction. This allegation was irrelevant because the statute defining the principal offense charged made no provision for enhanced punishment in that type of case. The court stated:

"* * * It is true that mere surplusage which does not affect substantial rights of the defendant can do no harm and its presence in an indictment will not support an attack thereon (Musgrave v. State [1892], 133 Ind. 297, 304, 32 N.E. 885); but

occasions such as the present may arise in which matter complained of tends, on the one hand, to prejudice the accused and yet does not serve to render the indictment double. The fact of a prior conviction was not, under the issues in this proceeding, a circumstance which could properly be brought to the attention of the jury in any manner as a part of the state's case (Rock v. State [1916], 185 Ind. 51, 110 N.E. 212), and all reference thereto should have been omitted from the indictment. We see nothing in the Criminal Code which necessarily prevents the recognition, in a proper instance, of a motion to strike from an indictment or affidavit such allegations as serve only to prejudice the defendant without aiding or contributing to the statement of the offense charged and, on the contrary, we are of the opinion that such a motion may be sustained under the general provisions of § 2231 Burns 1914, Acts 1905 p. 584, 659. The decision in the Gallaher case on the present question of practice is therefore disapproved, and in this case the action of the trial court in overruling appellant's motion to strike out is held to constitute reversible error.''

The distinction between mere surplusage and prejudicial surplusage is aptly made in *Ford v. United States,* 10 F2d 339, 344, as follows:

''It is argued that there can be no criminal offense in violating the treaty between this country and Great Britain. This is true, but the reference to the treaty may be rejected as surplusage, and the indictment still states facts sufficient to constitute a crime. Bailey v. U.S. (C.C.A.) 5 F.(2d) 437; Remus v. U.S. (C.C.A.) 291 F. 501; U.S. v. Weiss (D.C.) 293 F. 992, 995; U.S. v. Drawdy (D.C.) 288 F. 567, 570. Plaintiffs in error cite Torphy v. State, 187 Ind. 73, 118 N.E. 355, where the Indiana court reversed a conviction because the indictment improperly charged that defendant had been previously convicted. Such an allegation would be mani-

festly damaging, but the reference to the treaty in this indictment could not have prejudiced these plaintiffs in error."

The Indiana court reversed because of the failure of the trial court to sustain the motion to strike the irrelevant allegation of prior conviction. As before observed, in this state a motion to strike is not available, but in lieu thereof, the statute provides for a demurrer. *State v. Conklin,* 47 Or 509, 511, 84 P 482. It is our opinion that the inclusion of the allegations of prior convictions in the instant indictment subjected the indictment to demurrer on the ground that it does not substantially conform to the requirements of ORS 132.520, supra, if we shall find that such allegations were irrelevant and immaterial to the charge of the principal offense. That brings us to a discussion of the principal issue presented on this appeal. The crime defined in ORS 167.045, supra, defines the offense charged against the defendant in the instant indictment.* The principal offense is charged in the words of the statute and is sufficient. The crime defined in ORS 167.045, supra, is one of those crimes for which an enhanced penalty is provided under the provisions of ORS 167.050, supra. It will be observed that ORS 167.050, supra, contains no provision as to the procedure that should be followed in connection with the imposition of the enhanced penalty in a proper case. In the absence of such a provision the state argues that, following the common-law procedure, the prior convictions must be alleged in the indictment and proved on the trial of the principal offense, or the enhanced

---

* Note: ORS 167.045 defines the crime charged against the defendant Johnson and ORS 167.165 defines the crime charged against the defendant Waterhouse.

penalty cannot be imposed upon conviction. Defendant argues that this procedure is highly prejudicial to him in that it deprives him of trial before an impartial jury, abrogates the fundamental guarantee of the presumption of innocence, and puts his character in issue without his consent. In the alternative, defendant suggests that the court could prescribe a fair procedure for indicting and sentencing under this particular enhanced penalty statute. He suggests that such a procedure might be to file a separate information under which the questions of fact could be determined by a jury after the defendant had been found guilty of the principal charge; this is the procedure provided by ORS 168.040 for the imposition of enhanced penalties under the habitual criminal act of this state. ORS 168.010 to ORS 168.070, inclusive. The habitual criminal act of this state is nothing more nor less than an enhanced penalty statute.

Prior to the adoption of the habitual criminal act of this state in 1927, we had held that in order to impose an enhanced penalty in a case where such penalty was proper under the statute, it was necessary to allege the prior conviction in the indictment for the principal offense. In other words, we adopted and followed the common-law rule in that respect. *State v. Newlin,* 92 Or 589, 596, 182 P 133; 92 Or 597, 599, 182 P 135. In both the Newlin cases the defendant had been indicted upon a charge of unlawful sale of intoxicating liquor. The indictments did not contain any allegations as to prior convictions of the defendant for violations of the statute involved, but, upon conviction, enhanced penalties were imposed. Because of the failure of the indictments to allege the prior convictions, we set the judgments aside and remanded the causes to the trial court with directions to re-sentence the defendant with-

out regard to any previous convictions. In the first Newlin case above cited, Chief Justice McBride, speaking for the court, said:

> "It was also suggested upon the argument that it was error to adjudge the defendant guilty of a second offense and sentence him accordingly, in the absence of an allegation in the indictment charging the prior conviction, and this seems to be the general holding of the courts: 22 Cyc. 356, and cases there cited."

It is stated in 22 Cyc 356, Indictments and Informations, upon which we relied in the Newlin cases, as follows:

> "In charging those offenses which become offenses of greater degree or subject to a greater punishment by reason of having been committed under aggravating circumstances or with particular intent, it is necessary first to charge the minor offense with its appropriate description, and then allege the matter of aggravation.
>
> "Where, in case of repeated convictions for similar offenses, the statute imposes an additional penalty, an indictment for a subsequent offense must allege the prior convictions, since such convictions, although they merely affect the punishment, are regarded as a portion of the description of the offense."

That was the common-law rule, and at the time we decided the Newlin cases (1919), it was supported by the overwhelming weight of authority. However, it must be kept in mind that the Newlin cases were decided several years before the legislature of this state enacted the habitual criminal act and therein prescribed the procedure to be followed in the imposition of enhanced penalties. It is manifest that when the legislature adopted this procedure under the habitual

criminal act, it did so with knowledge of the common-law rule as to procedure, as well as with knowledge of our decisions in the Newlin cases where we had approved that procedure. In the light of this, it is reasonable to infer that the legislature clearly intended to abrogate the common-law rule of procedure insofar as the imposition of enhanced penalties under the habitual criminal act were concerned.

Since our decisions in the Newlin cases, and particularly, since the adoption of the procedure provided in the habitual criminal act, we have not been called upon to decide the question whether allegations of prior convictions must or may be included in an indictment where an enhanced penalty is to be imposed, until the instant case. At the outset we acknowledge that there are respectable authorities supporting both sides of this question. However, we are of the opinion that the better reasoning is to be found in the decisions of those courts which have shown a high regard for the fundamental right of an accused to a fair and impartial trial upon the specific offense with which he is charged—a trial wholly free from prejudice—and which courts have denied both the necessity and propriety of alleging the prior convictions in the indictment for the principal crime.

In our sister state of Washington the Supreme Court in *State ex rel. Edelstein v. Huneke,* 140 Wash 385, 387, 249 P 784, and in a case where the defendant made the claim that the prior conviction should be alleged in the indictment as a condition for the imposition of an enhanced penalty, upheld the lower court's procedure of charging and trying the two issues separately. The court said:

> "None of the cases cited, however, appear to determine the precise point presented here, which

may be stated as follows: Is any constitutional right of a defendant invaded by charging and trying the two issues separately, if no statute prescribes the form of procedure and both be determined before valid sentence passed?

"It has been the custom in this state to charge defendants in this manner since the passage of the act of 1903, supra; when the act of 1909, supra, was passed the prosecutors still continued to charge in the same manner. State v. Gustafson, 87 Wash. 613, 152 Pac. 335; State v. Cotz, 94 Wash. 163, 161 Pac. 1191; State v. Kelch, 114 Wash. 601, 195 Pac. 1023; State v. Spencer, 130 Wash. 595, 228 Pac. 689.

"While many questions have arisen under the act, it must be admitted that in none of the cases that have so arisen since the act of 1909, supra, has the precise question here presented been decided by us and it is incumbent upon us therefore for the first time to determine this matter. However, a practice long established in this state, which neither rests upon nor conflicts with any statutory provision, should not lightly be set aside unless a consideration of the reasons urged for its rejection show that some right of petitioner has been violated. This of necessity leads us to the practical question of whether the rights of a defendant are safeguarded by the established procedure, or whether the practice contended for by the petitioner will more nearly approach unto that great end which, although not always attained, is the delight of all courts, namely, a fair trial for all defendants, freed from every taint of prejudice.

"It seems too plain for argument that to place before a jury the charge in an indictment and to offer evidence on trial as a part of the state's case that the defendant has previously been convicted of one or more offenses is to run a great risk of creating a prejudice in the minds of the jury that no instruction of the court can wholly erase; and while appellate courts will presume that

the jury has followed the instructions of the court, yet we cannot blind our eyes to the active danger ever lurking in such action. Courts have so recognized this fact that, although finding no error in the charging and showing to the jury upon an original charge the fact of previous convictions, they have frequently adverted to its danger and suggested ways to eliminate that prejudice. In England the matter reached such a point that by statute the principal charge was first required to be found by the jury and then proof of previous conviction was presented to them. Johnson v. People, 55 N.Y. 512.''

In *State v. Kirkpatrick,* 181 Wash 313, 316, 43 P2d 44, the Washington court reversed a conviction where the prior convictions had been alleged in the indictment. The court said:

"If it was not made sufficiently clear in the Edelstein case, we now say that we refuse to be bound by an archaic common law practice which impinges upon the fair and impartial trial guaranteed by the constitution to everyone charged with a criminal offense. That the common law rule does infringe upon the right of fair trial, is acknowledged even by courts which apply it. In State v. Findling, supra, it is said:

" 'We follow and apply the general rule, though it may be remarked, in passing, that entire fairness in prosecutions of this character would suggest some statutory change in the law, dispensing with the necessity of pleading the fact of prior conviction, and providing for the determination thereof by the court after conviction of the charge on trial. This would avoid any possible prejudice to defendant.' "

In *State v. Stump,* 16 Wash2d 140, 132 P2d 727, the Washington court refused to apply the procedure used for the imposition of enhanced penalties under the habitual criminal statute to an aggravated offense

statute with respect to prohibition. The statute involved made it unlawful to keep or possess liquor with intent to sell the same. This provision of the law was a part of the statute dealing with the question of prohibition. The statute provided that "every person guilty of a violation of this act for which no penalty has been specifically provided shall be liable on conviction, for a first offense to a penalty of not more than $300.00 or to imprisonment for not more than two months, with or without hard labor, or both; for a second offense to imprisonment for not more than six months, with or without hard labor; and for a third or subsequent offense to imprisonment for not more than one year, with or without hard labor." The court pointed out what it claimed to be a distinction between this statute and the habitual criminal act. It pointed out that under the practice in the state of Washington in all cases involving statutes such as that then before the court it had been the custom to plead the prior conviction in the indictment. The court said:

"It is apparent that the practice in this state in this type of case has always been to submit evidence of prior convictions, under proper instructions to the jury, at the same time as the evidence of the primary offense is submitted. In other jurisdictions, the authority is almost universal (Massey v. United States, 281 Fed. 293) that it is the established rule, *under statutes such as that with which we are here concerned,* that, unless the statute designates a different mode of procedure, if the prosecution desires to invoke the serious punishment provided as to second and subsequent offenders, the indictment or information must allege the fact of prior conviction, and the allegation of such conviction must be proved in the trial to the jury." (Italics ours.)

It will be observed that the court spoke of this rule as applicable to statutes of the type then being considered by the court; that is, a statute which in defining the crime also prescribed the enhanced penalty for subsequent convictions. In seeking to make a distinction between the type of statute then under consideration and the habitual criminal act, the Washington court cited with approval two cases from Kansas. *State v. Jones,* 147 Kan 8, 75 P2d 230; and *Levell v. Simpson,* 142 Kan 892, 52 P2d 372. In the Jones case the crime charged was similar to that present in the Washington case. The Kansas prohibition act, like that of Washington, contained a provision for enhanced penalty upon a second conviction, but different from the Washington statute, it provided that a second conviction of a violation of the act should constitute a felony. In speaking of this provision of its prohibition law, and the procedure to make it effective, the Kansas court said:

"It is further suggested the introduction of the record of former conviction prejudiced the defendant before the jury. We find no objection to the record of former conviction on that ground. Such objection, if it had been made, would have been futile. In this state the second infraction of the prohibitory liquor law constitutes a distinct crime; a felony. G.S. 1935, 21-2146. The formalities of the felonious charge are required to be pleaded in the information and of necessity proved to the satisfaction of the jury. The former conviction under the prohibitory liquor law is an element of the felony and is based on an entirely different principle than the proof of a former conviction under our Habitual Criminal Act. Under the later act the former conviction is not an element of the offense and need be considered only by the trial court in order to determine the sentence to be imposed. The sentence to be imposed under that act is solely a

question of law and does not concern the jury. For an analysis of this distinction and the reasons underlying the same, see Levell v. Simpson, 142 Kan. 892, 52 P.2d 372 and Glover v. Simpson, 144 Kan. 153, 58 P.2d 73.''

Thus it appears that the Kansas court held it necessary to allege and prove the prior conviction because the second infraction of the prohibitory law constituted a distinct crime; to-wit, a felony. That is not the basis for the decision of the Washington court in the Stump case. In the Levell case, supra, the Kansas court held that pleading the former convictions in an indictment charging the principal offense, or offering proof thereof upon the trial, was improper and unnecessary to the imposition of enhanced penalties under the habitual criminal act. In the Stump case the Washington court neither criticized nor overruled its decision in the Edelstein case, supra. Neither did it mention the Kirkpatrick case, supra. Assuming, for the sake of argument, that the distinction made by the Washington court in the Stump case is a proper distinction, nevertheless, we are of the opinion that ORS 167.050 is more akin to the Washington habitual criminal act than it is to the aggravated offense statute considered in *State v. Stump.*

It is obvious that the primary purpose of the legislature in the adoption of ORS 167.050 was to take out of circulation the confirmed sex criminal. It intended that when one was shown to be such a confirmed criminal by the repeated commission of sex crimes, he should no longer be permitted to roam at large as a constant menace to the youth of this state. It certainly desired that when one was convicted of a sex crime, who had theretofore been convicted of a similar offense, he should suffer the enhanced penalty.

It is manifest that if it were required that a prior conviction be alleged in the indictment and established by proof on the trial, as a condition precedent to the imposition of the enhanced penalty upon conviction, the primary purpose of the legislature in enacting the enhanced penalty statute in question would, in many cases, be defeated. It often happens that when the grand jury indicts a person for the commission of a crime, it does not have before it knowledge of a prior conviction of such person. It often happens that the discovery of the fact of a prior conviction or prior convictions is not made until long after the indictment has been returned and most frequently not until after conviction, and in some cases until after sentence. Under the procedure provided in the habitual criminal act this danger of one escaping the penalty which properly should be imposed upon him is largely eliminated.

Thus the procedure for the imposition of enhanced penalties as provided in the habitual criminal act is not only of benefit to the defendant in that he is not prejudiced by the inclusion of prior convictions in the indictment charging the principal offense, but it also is of benefit to the state in that escape from the punishment the law provides for in the given case is rendered quite improbable.

The practice in England of alleging in an indictment for the principal offense a former conviction as a condition for the imposition of an enhanced penalty was abrogated by statute in 1861. 24 and 25 Vict, ch 96, § 116. The statute provided, in substance, that in any indictment for an offense committed after a previous conviction of a felony or indictable misdemeanor, it should be sufficient, after charging the subsequent offense, to state that the offender was, at a certain time and place, convicted of a felony or indictable mis-

demeanor without otherwise describing the previous felony or misdemeanor. The act then provided:

"* * * the Offender shall, in the first Instance, be arraigned upon so much only of the Indictment as charges the subsequent Offence, and if he plead Not Guilty, or if the Court order a Plea of Not Guilty to be entered on his Behalf, the Jury shall be charged, in the first instance, to inquire concerning such subsequent Offence only; and if they find him Guilty, or if on Arraignment he plead Guilty, he shall then, and not before, be asked whether he had been previously convicted as alleged in the Indictment, and if he answer that he had been so previously convicted the Court may proceed to sentence him accordingly, but if he deny that he had been so previously convicted, or stand mute of Malice, or will not answer directly to such Question, the Jury shall then be charged to inquire concerning such previous Conviction or Convictions, and in such Case it shall not be necessary to swear the jury again, but the Oath already taken by them shall for all Purposes be deemed to extend to such last-mentioned Inquiry: * * *."

The Supreme Court of errors of the state of Connecticut approved and adopted this English practice. *State v. Ferrone,* 96 Conn 160, 175, 113 A 452. The Connecticut court said:

"In the absence of statutory regulation in this State, it is our opinion that a procedure similar to that prescribed by an English statute (24 & 25 Vict. c. 99, s. 37) should be followed. Reg. v. Martin, L.R. 1 Cr. C. 214. The information should be divided into two parts. In the first, the particular offense with which the accused is charged should be set forth; and this should be upon the first page of the information and signed by the prosecuting officer. In the second part, former convictions should be alleged, and this should be upon the second page of the information, separable from the

first page, and signed by the prosecuting officer. The entire information should be read to the accused and his plea taken in the absence of the jurors. When the jury has been impaneled and sworn, the clerk should read to them only that part of the information which sets forth the crime for which the accused is to be tried. The trial should then proceed in every respect as if there were no allegations of former convictions, of which no mention should be made in the evidence, or in the remarks of counsel, or in the charge of the court. When the jury retire to consider their verdict, only the first page of the information, on which the crime charged is set out, should be given to them. If they return a verdict of guilty, the second part of the information, in which former convictions are alleged, should be read to them without reswearing them, and they should be charged to inquire on that issue. Of course, the accused may plead guilty to this part of the information, and then no further proceedings before or by the jury would be necessary. No reason appears why the accused, if he should choose, might not submit this issue to the court without the jury.

"In this way the well-recognized rights of an accused person will be protected, and the principles of justice and our long-established laws, which have been designed to secure an impartial trial in every criminal cause, will be recognized, respected and obeyed."

The opinion in the Ferrone case contains a splendid discussion of the reasons why the issue of a prior conviction should not be brought to the attention of a trial jury until after the defendant had been found guilty of the particular offense of which he was then charged. We quote with approval the following portion of that discussion:

"It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by

which the jury should not be influenced, if, during that trial, allegations that he has twice before been convicted of State prison crimes have been read to the jury, and evidence of his former convictions has been placed before them. It is beyond question that knowledge of such facts must necessarily prejudice the minds of his triers against the accused, and cause him more serious injury than that which he would suffer from any improper remarks of the State's Attorney. No one would claim that in a trial for a specific crime evidence of another crime committed by the accused could be admitted for the purpose of proving his guilt of the crime alleged. The purpose of a criminal trial in this State is not more to punish the guilty than to discharge the innocent. Whatever may have been the previous offenses or the bad character of the accused, the law surrounds him with the presumption that he is innocent of the specific crime with which he is charged, and, while that presumption has no evidential force, it casts upon the State the burden of proving that the accused is guilty of that specific crime by evidence of facts material and relevant to that crime. State v. Smith, 65 Conn. 283, 31 Atl. 206. Upon such evidence only, the jury are sworn to render their verdict. A man is not to be convicted of one crime by proof that he is guilty of another. Therefore, our law sedulously guards against the introduction of evidence of any matter immaterial or irrelevant to the single issue to be determined. The purpose of these salutary laws might often be defeated if the minds of the jurors were subjected to the influence of facts or considerations having no legitimate bearing on the only question they have to decide, and their verdict be reached under the impulse of passion, sympathy, or resentment. Such a verdict is illegal and will be set aside.''

In *State v. Findling,* 123 Minn 413, 416, 144 NW 142, decided in 1913, the Supreme Court of Minnesota,

although following the common-law rule, questioned its fairness. The court said:

"* * * All other courts where the question has been presented hold that the prior conviction must be pleaded and proven on the trial, and no distinction is made because of the fact that in some of the states the punishment is fixed and determined by the jury, and in others by the court upon a verdict of guilty. We follow and apply the general rule, though it may be remarked, in passing, that entire fairness in prosecutions of this character would suggest some statutory change in the law, dispensing with the necessity of pleading the fact of prior conviction, and providing for the determination thereof by the court after conviction of the charge on trial. This would avoid any possible prejudice to defendant."

Subsequent to the decision in the Findling case the legislature of Minnesota enacted the habitual criminal act of that state. Section 610.31 of the Minnesota act is substantially the same as ORS 168.040 of our habitual criminal act. In *State v. Zywicki*, 175 Minn 508, 510, 221 NW 900, the Supreme Court of Minnesota held that the procedure for the imposition of enhanced penalties provided for in M.S.A. 610.31 did not deprive the defendant of any of his constitutional rights. We quote from the opinion as follows:

"The only arguable question would seem to be whether the procedure prescribed by the act is such as to deprive the defendant of any of his constitutional rights. The information presented to the court for the purpose of showing prior convictions is not an *indictment* or information charging the defendant with having committed a crime. It merely charges a prior conviction or convictions, which if proved will increase the sentence to be imposed, or already imposed, for the later crime of which defendant is brought before the court and the in-

formation read to him, and he is required to say whether or not he has been convicted as charged in the information; in other words, to plead thereto. He must be informed of his right to a trial as to the truth of the charge. He is required to be cautioned as to his rights. If he denies the charge or remains silent, a jury trial must be had. The law has become a part of the laws of the state governing criminal trials and procedure. We have no difficulty in holding that the trial procedure here is the same as in trials for criminal offenses; that the defendant has the same right to a speedy trial, to time for preparation, assistance of counsel, compulsory process for witnesses, to be confronted with the witnesses against him, to require proof beyond a reasonable doubt, and to all other rights enjoyed by a defendant on trial for a criminal offense. So viewed, the procedure prescribed seems not to deprive the defendant of any constitutional rights."

We have taken substantially the same position with respect to our own habitual criminal act. In *State v. Smith*, 128 Or 515, 524, 273 P 323, we said:

"The statute under which the defendant was tried and convicted is not an *ex post facto* law. It has been a part of the Oregon Criminal Code since its adoption in 1864. Nor has the defendant been placed twice in jeopardy for the same offense. The law is thus stated by Dr. Bishop:

" 'The increased punishment for a second offense does not put the doer a second time in jeopardy for the first, so as to violate our constitutions. The augmented punishment is for persisting in wrong by repeating the crime. *The former conviction is not an integral part of the second or new offense.* The law merely imposes a longer sentence because of the former conviction, but does not again prosecute or punish for it. It adds to the punishment for the last crime

because of the class to which the defendant belongs.' 1 Bishop on Criminal Law (9 ed.), § 965.'' (Last italics ours.)

Also in *State v. Smith,* 128 Or at page 521, we stated as follows:

"Defendant likewise complains that the indictment upon which he was tried for receiving stolen property should have alleged his prior conviction. *This is erroneous.* Under the statutes in some jurisdictions, the indictment shall allege the prior convictions, and there are many decisions in the books that support that contention. This was made a requirement in our own jurisdiction by the enactment of Chapter 70, General Laws of Oregon, 1921; but this act was repealed by Section 5 of Chapter 334, General Laws of Oregon, 1927, the statute under consideration. Under this statute, the proceeding is had, not for the purpose of determining the guilt or innocence of the defendant, but for the purpose of identifying him as the person alleged to have been convicted of previous felonies. It provides for a special supplementary proceeding, and is much fairer to the defendant than to charge him with crime by an indictment and allege therein his conviction of half a dozen previous felonies. On this subject, Dr. Bishop, an eminent authority on criminal law, has written:

" 'Under the ordinary forms of the statutory provision, if the offense is the second or third, and by reason thereof the punishment is to be made heavier, this fact must appear in the indictment; because by the rules of criminal pleading, every particular which makes heavier the punishment to be inflicted must be set out. *Still there is no reason why the law should not, as in some localities it does, permit this matter to be withheld from the jury, or even omitted from the indictment, until the prisoner has been convicted of the offense itself* and then brought for-

ward in some proper manner in aggravation of the punishment. A course like this is specially fair to the prisoner as preventing a prejudice against him by the jury from the former conviction, which is not legal evidence.' 1 Bishop on Criminal Law (9 ed.), § 961." (Italics ours.)

Also see *Little v. Gladden*, 202 Or 16, 19, 273 P2d 443; *Castle v. Gladden*, 201 Or 353, 360, 270 P2d 675.

In *Shaw v. Utecht*, 232 Minn 82, 88, 43 NW2d 781, the court said:

"* * * *While the inclusion by the county attorney of accusations of prior convictions in the same information with that charging petitioner with the crime of robbery in the first degree was contrary to M.S.A.* 610.31, 11 it affirmatively appears that at the trial and during the presentence examination by the trial court petitioner expressly admitted the prior convictions alleged in the information."

Foot note 11, referred to in the above quotation from the Minnesota decision, reads as follows:

"Before the enactment of the present statute, prior convictions, in order to be taken into consideration in imposing punishment, were required to be alleged in the indictment or information charging the subsequent crime. State v. Findling, 123 Minn. 413, 144 N.W. 142, 49 L.R.A. (N.S.) 449. The present statute enacted in 1927, however, 'does away with the necessity of charging prior convictions in the information or indictment for the later crime' (State v. Zywicki, 175 Minn. 508, 513, 221 N. W. 900, 902), and provides in effect that an accused should not be tried on accusations of prior convictions until after he has been convicted of his last offense. See, State v. West, 175 Minn. 516, 221 N.W. 903."

In *Commonwealth v. Ciccarelli*, 42 D & C 643, the Pennsylvania court held that whenever by statutory

enactment a second offense must carry a greater sentence than a first offense, the second offense is an offense different in kind and character from the first offense, and the indictment must plead a conviction of and sentence for the prior offense. However, in the later Pennsylvania case of *Commonwealth v. Scott,* 54 D & C 243, the court limited the Ciccarelli case to a holding that the prior convictions must be alleged in the indictment, but stated that the judge in that case did not discuss the procedural difficulties in bringing that averment either before the jury or the court. In the Scott case the court, recognizing the prejudice to the accused by allowing evidence of that character or reputation, stated that the situation called for corrective legislation. But without waiting for such legislation, the court itself set out the procedure that should have been followed in the case. The procedure outlined by the court was similar to that provided by the statute in England and also adopted in Connecticut. Because the trial court had not followed such procedure, the court held that the enhanced penalty imposed upon the conviction was unlawful.

In many of the cases which held that it was necessary to allege in the indictment the prior conviction as a condition to the imposition of an enhanced penalty, it is evident that the courts were led to the conclusion because of a belief that they were bound to follow the common law. We are not so bound.

In this state we have a statute not common to all other states. ORS 1.160 provides:

"When jurisdiction is, by the constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the

procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes.''

We considered the foregoing statute in *Williams v. Pacific Surety Co.*, 66 Or 151, 155, 127 P 145, 131 P 1021, 132 P 959, 133 P 1189, where the question before us was whether or not the plaintiff could bring an action without joining his co-obligee in a bond as a plaintiff. In adopting a procedure different from the traditional common-law procedure, we said:

"This [§ 983, LOL, now ORS 1.160] wipes out common-law procedure, as such, with all its delays and technicalities, and leaves the court free to adopt such common-law procedure when in conformity with the spirit of the code, and to reject it when a procedure better calculated to facilitate the administration of justice presents itself.''

In *State v. Ridder*, 185 Or 134, 139, 202 P2d 482, we considered § 13-715, OCLA, which is now ORS 1.160, in connection with ch 62, Oregon Laws 1945, which gives a defendant who has pleaded guilty the right to appeal from a judgment of conviction, where that judgment imposes excessive, cruel, or unusual punishment. That statute did not make provision for a procedure to be followed in bringing to this court the record of the circuit court in that type of a proceeding. Pursuant to the provisions of § 13-715, OCLA [ORS 1.160], we prescribed the method of procedure to be followed under ch 62, Oregon Laws 1945.

Another case in which this court rejected the common-law procedure in favor of a better and fairer procedure is *State v. Durham*, 177 Or 574, 580, 164 P2d 448, 162 ALR 422. In that case the circuit court had denied the defendant the right to peremptory chal-

lenges in the selection of the jury called in connection with the supplementary proceedings provided for by the habitual criminal act. In speaking for the court, Mr. Chief Justice BELT, in part said:

"We are not unmindful of the fact that at common law peremptory challenges in criminal cases were confined to the main issue and did not extend to the trial of collateral issues. Wharton's Crim. Proc. (Vol. III) § 1548-1551, Chitty's Crim. Law 535, 35 C.J. 407, Bishop's New Crim. Proc. § 942. It is clear that the question of whether defendant is an habitual criminal is collateral to the main issue of his guilt or innocence of the principal charge, but we think it is not collateral to the question as to the kind of judgment of conviction to be entered against him.  *   *   *

"Whatever may be the common law rule relative to peremptory challenges, we think that when the legislature enacted § 26-2804 O.C.L.A., in 1927, giving the defendant an absolute right to a jury trial, it had in mind the kind of jury trial then in practice. It was not concerned with a jury trial under ancient common law rules.  *   *   *   Although the jury in this special proceeding is not determining the guilt or innocence of the defendant on the main charge, it is nevertheless well established that it is a criminal proceeding.

"*   *   *   *   *

"*   *   *   We think it is far more in keeping with the proper administration of justice that there be no such impairment of the right of trial by jury, and that reversible error was committed in denying defendant the right of peremptory challange."

In arriving at this conclusion in the Durham case, the New York case of *People v. Reese,* 258 NY 89, 179 NE 305, 79 ALR 1329, was recognized as contra, and the reasoning of the New York court was expressly rejected. In New York, despite the procedure set forth

in its habitual criminal act respecting the imposition of enhanced penalties, the court has held that it is nevertheless permissible to allege the prior convictions in the indictment for the offense of which the defendant is charged. *People v. Gowasky,* 244 NY 451, 155 NE 737, 58 ALR 9, 14. This conclusion of the New York court stated in one sentence of its opinion appears somewhat inconsistent with other parts of the decision. After discussing the English practice heretofore referred to, and that of Massachusetts and West Virginia, the court in the Gowasky case said:

"These laws and decisions of other states I have referred to and quoted in order to show that the action of the state of New York in adopting chapter 457, of the Laws of 1926, amending §§ 1941, 1942, and 1943 of the Penal Law, commonly known as the 'Baumes Act,' was nothing new. The practice was a century old. *Either out of fairness to the prisoner, or else for public safety,* the method of charging a prisoner after conviction, not before, with having been previously convicted of crime, and sentencing him accordingly, was well-known to the law." (Italics ours.)

Considering the substantial reasons existing for the procedure set forth in our habitual criminal act, we are of the opinion that that procedure is exclusive, and we do not agree with the New York court that it is still permissible to follow the common-law procedure. We prefer to follow the course taken by the Supreme Court of Minnesota.

It might be argued that having provided a procedure for the enforcement of enhanced penalties under the habitual criminal act, but having omitted to make such provision in ORS 167.050, the legislature manifested an intention to have the common-law rule apply in all prosecutions in which ORS 167.050 might become

applicable. On the other hand, and with better reason, we believe, it may be argued that inasmuch as at the time ORS 167.050 was enacted, a definite procedure for the imposition of enhanced penalties had been provided by law and had been continuously followed in this state for a period of more than 25 years, the legislature assumed that such had become the well-established practice in all such cases, and that it was unnecessary to again set forth the procedure to be followed under the later enhanced penalty statute. It is not reasonable to suppose that the legislature intended that there should be one procedure under the habitual criminal act and another and different procedure under this statute when the primary purposes of both statutes are precisely the same. It abrogated the common-law rule when it enacted the habitual criminal act; it would be unreasonable to infer that it intended to revive it in this particular statute, especially when no sound reason for such action appears, and there is none. ORS 1.160, supra, fully justifies us in adopting as the procedure to be followed under ORS 167.050, the same procedure provided under the habitual criminal act. That procedure is fair both to the state and to the defendant.

Our conclusion is fortified by the legislative history of this state. In 1921 the legislature adopted an enhanced penalty statute and expressly provided that prior convictions should be alleged in the indictment for the principal offense as a condition precedent to the imposition of the enhanced penalty. In other words, it adopted the common-law procedure approved in the Newlin cases. Ch 70, Oregon Laws 1921. In 1927, however, when it first enacted the habitual criminal act, the legislature provided the procedure now followed and expressly repealed the act of 1921. Ch 334,

§ 5, Oregon Laws 1927. Thus, the legislature evidenced a clear intent to abolish the common-law rule in this state." And the opinion concluded with a statement that the judgment should be confirmed.

For the reasons above stated, I think the order of the circuit court should be affirmed in this case and in *State v. Johnson,* also decided this day.

I also concur in the dissenting opinion of Chief Justice PERRY.

Chief Justice PERRY concurs in this dissent.